## J. B. FERGUSON v. T. L. RAFFERTY.

ERROR TO THE COURT OF COMMON PLEAS OF CLEARFIELD COUNTY.

Argued April 22, 1889—Decided October 7, 1889.
[To be reported.]

1. Where the execution of a written agreement has been induced upon the faith of an oral stipulation, made at the time but omitted from the written agreement, though not by fraud, accident or mistake, parol evidence of the oral stipulation is admissible to add to or change the terms of the written instrument.
2. But such oral stipulation must be established by clear, precise and indubitable proof; i. e., the witnesses must be credible, and their statements clear and distinct as to what was done and said, and of such a character as should convince the jury that the party was induced to sign the contract by the contemporaneous oral agreement.

3. When the testimony of the plaintiff and one other witness clearly and distinctly stated the making of such oral agreement, and justified an inference that the plaintiff's signature to the written contract was obtained thereby, and the other party thereto did not clearly deny the oral agreement, the evidence was sufficient to sustain a verdict re-forming the instrument.

4. A notice, read at a sheriff's sale, containing a distinct claim of title to the property about to be sold, makes it the duty of a bidder to inquire of the person giving the notice respecting the kind of title claimed and the facts upon which it is based, and he is chargeable with notice of all that such inquiry would have disclosed.

5. If the vendor and vendee of timber, to be cut by the latter, agree that the former shall hold the logs cut as security for the purchase money of the timber, such agreement leaves in the vendor a qualified title upon which, the purchase money remaining unpaid, he may maintain replevin for logs removed by the vendee or one claiming under him.

6. Where one co-tenant in remainder, with the life-tenant's consent and without objection by the other remaindermen, has sold growing timber, reserving the right to hold the logs when cut as security for the price, and brings replevin to enforce this security, the defendant, while claiming under said sale, cannot defeat the action on the ground that others are interested in the logs with the plaintiff.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and McCOLLUM, JJ.

No. 229 July Term 1888, Sup. Ct.; court below, No. 22 March Term 1883, C. P.

To the number and term of the court below, Thomas L. Rafferty brought replevin against John B. Ferguson, for two lots of pine saw-logs, one containing 85,000 feet and another 160,000 feet, taken from lands known as the James Rafferty lands in Penn township. The defendant pleaded non cepit and property.

At the trial on May 23, 1888, the following facts were made to appear:

Thomas Rafferty, the father of the plaintiff died in May, 1870, leaving to survive him a widow, Martha Rafferty, and eight children, among them T. L. Rafferty, the plaintiff, James Rafferty, Arthur Nelson Rafferty, David Rafferty and Mary Jane Rafferty. By his will, duly admitted to probate, said Thomas Rafferty devised to his son James Rafferty the land upon which the timber in controversy had grown, and devised and bequeathed certain other property to Arthur Nelson, David and Mary Jane, who were of full age but were deaf mutes,

and appointed John B. Rafferty and John Clark "sole guardians of my aforementioned children," giving them absolute control over all the property devised or bequeathed to them.

The land devised to James Rafferty contained about ninety-six acres, was timber land, and about sixty acres of the timber had been cut away prior to its purchase by the testator. Of the remaining thirty acres, still covered by timber, James had cut away about six acres, when he died intestate, unmarried and without issue, leaving to survive him his mother Martha Rafferty, and his seven brothers and sisters. Subsequently, all said brothers and sisters except Arthur Nelson, David and the plaintiff, died, some without issue and some leaving issue. On January 28, 1878, upon the petition of Martha Rafferty to the Orphans' Court, Grier Bell, Jr., and Richard Danver, Jr., were appointed trustees of Arthur N. and David Rafferty, vice John B. Rafferty and John Clark. These substituted trustees filed a bond, which was approved.

Under objections and exceptions sealed for the defendant, covered by the first, second and third assignments of error, the plaintiff read in evidence a sealed agreement in writing, dated May 1, 1881, between Richard Danver and T. L. Rafferty, wherein "Richard Danver, guardian for Nelson and David Rafferty, of the first part," agreed to sell to T. L. Rafferty all the white pine timber on the land devised to James Rafferty, for the price of five cents per cubic foot, payable in two years from date.

Also under objection and exception sealed for the defendant covered by the fifth assignment of error, the plaintiff read in evidence the record of a judgment in favor of Richard Danver, trustee, against T. L. Rafferty, for $1,100, entered on August 14, 1883, upon a judgment obligation given by the plaintiff for the purchase money in full of said logs.

The plaintiff then read in evidence an article of agreement between himself, of the one part, and E. W. Hepburn and W. C. Hoover, of the other part, dated November 19, 1881, whereby he had sold the timber embraced in his contract of May 1, 1881, with Richard Danver to Hepburn and Hoover, for the price of six and one half cents per cubic foot; and, after testifying that Hepburn and Hoover had subsequently sold their interest under this contract to D. L. Ferguson, and applied to

plaintiff to release them and take D. L. Ferguson in their stead, he put in evidence a supplementary agreement indorsed on the contract of November 19, 1881, as follows:

"And now, this 2d day of December, 1882, I, Levi Rafferty, do agree to release E. W. Hepburn and W. C. Hoover on the within article, and to transfer the same to D. L. Ferguson, and that the said D. L. Ferguson is to pay the balance due on the within agreement as soon as the logs are all delivered in Curry Run. Said logs are to be scaled straight and sound, and instead of six and one half cents per cubic foot, to be six and 50-100 dollars per thousand feet.

"Witness our hands and seals. Done this 2d day of December, 1882.

"T. L. RAFFERTY, [L. S.]"

"D. L. FERGUSON, [L. S.]"

The plaintiff being still on the stand, his counsel proposed to prove by him what was said and done when the last mentioned contract was executed. The offer being objected to, it was put in writing, but the written offer was lost during the trial and never recovered. As reproduced by the plaintiff's counsel who dictated it at the trial, it was presented in the paper-books as follows:

Plaintiff offers to prove by witness that he knew, at the time that E. W. Hepburn came to get his consent to a transfer of the Hoover and Hepburn agreement, that D. L. Ferguson was not a responsible purchaser; that he stated to Hepburn that he would not trust him without security; that they then went to Hepburn's house where Ferguson and Hoover were waiting; that he there told Ferguson that he would not consent to a transfer of the Hoover and Hepburn contract to him unless he would give him security; that Ferguson then agreed that he might hold the logs until he got his money; that when Ferguson had written out the agreement, and he found that it said nothing about the security, he objected to it; that Ferguson then said, you have the logs for security, you have these witnesses to that and witnesses are as good as if it were so stated in this contract; that Ferguson then called W. C. Hoover and E. W. Hepburn as witnesses to this parol agreement, and then the plaintiff signed it; that before these logs were all taken off the land Ferguson became insolvent; that judg-

ments amounting to upwards of $15,000 were entered up and executions issued; that as soon as plaintiff learned of this he went to Clearfield and issued a writ of replevin; that before it was served the logs had been levied on, and that he then went to the sheriff's sale at Lumber city and gave written notice at the sale of his lien for unpaid purchase money: The purpose of the offer being to show that plaintiff knew on December 2, 1882, that Ferguson was not a responsible purchaser, and would not have signed the written contract without security for the logs; that the alleged parol agreement was the inducing cause of his signing it; and for all other purposes for which it is competent.

The offer being objected to by the defendant, the objection was overruled and the offer admitted; exception.[4]

The plaintiff's testimony sustaining the offer, appears sufficiently in the opinion of the Supreme Court.

E. W. Hepburn, called for plaintiff, testified that he was present when the contract of plaintiff with D. L. Ferguson was executed:

Q. What, if anything, was said there between Ferguson and Rafferty with reference to security for the logs mentioned in that contract?

Defendant's counsel object to the question because the contract is in writing and speaks for itself.

By the court: Supposing this to be part of the written offer, already ruled upon, we overrule the objection, admit the evidence, and seal a bill for defendant.[6]

The testimony of the witness corroborated that of the plaintiff, and is also sufficiently given in the opinion of the Supreme Court.

It was further shown in the plaintiff's case, that after his purchase of the timber as already set forth, D. L. Ferguson proceeded to cut and remove it from the land; that after it had all been cut down and converted into logs, and the greater part of it taken off, on February 10, 1883, a judgment was entered against D. L. Ferguson in favor of John B. Ferguson, the defendant in the present case, for $7,300; that a fieri facias was issued the same day on this judgment and placed in the hands of the sheriff, who levied on all of the personal property of D. L. Ferguson, including the logs in controversy,

Charge of Court below.

which were sold under said writ on February 28, 1883, and purchased by John B. Ferguson, after the following notice to bidders at the sale was read:

"To R. Newton Shaw, high sheriff, and to all bidders and execution creditors:

"Sirs: You are hereby notified that the two certain lots of pine saw logs, to wit: 80,000 feet, more or less, pine saw logs in the woods on Rafferty's land in Penn township, stamped W 4 T, and 155,000 feet, more or less, pine logs in Curry Run, stamped W 4 T, are the property of Thomas L. Rafferty, and not of D. L. Ferguson. The conditions of the contract not having been complied with, and the purchase money or stumpage paid as per agreement, the said Thomas L. Rafferty gives notice that he will hold said logs until paid for, and will assert his rights as against the purchase of the same under the said levy and sale.              "T. Levi Rafferty,

                              "By his attorney, J. F. McKenrick.

"Clearfield, Pa.,

        "February 27, 1883."

The defendant being sworn testified that he did not hear the notice read at the sale; that he had no knowledge of any parol agreement between the plaintiff and D. L. Ferguson; that before paying the sheriff for the logs purchased by him, and before giving the replevin bond filed in this case, he had examined the written contract between the plaintiff and Hepburn and Hoover, and that between the plaintiff and D. L. Ferguson, had consulted counsel in regard to them, and as a result of such inquiry he gave his claim-property bond. The defendant put in evidence the deposition of D. L. Ferguson, in which the witness testified that "there was no other contract made except that made in the supplemental agreement."

At the close of the testimony, the court, Krebs, P. J., charged the jury, in part as follows:

*     *     *     *     *     *     *     *

Now, gentlemen of the jury, the plaintiff in this case contends that a material part of the agreement made or stipulated for at the time of this supplemental contract between himself and Ferguson, by which he released Hepburn and Hoover, was not written into this contract of December 2, 1882. He claims

that, at the time when he was asked to release Hepburn and Hoover and to consent to the transfer of their rights under the contract he had with them to D. L. Ferguson, he assented to that, providing he would have security for the logs. It is claimed by him that at the time they met, the four of them, at the house of Hepburn, in Pennville borough, when this contract was executed, it was agreed before the contract was executed that he should have the logs as security for his pay; that when the contract was reduced to writing by D. L. Ferguson and he found that the security was not mentioned in it, he spoke of that fact, and that D. L. Ferguson said to him that it was not necessary, that he could hold the logs as security, and that Hepburn and Hoover should be witnesses to that.

When parties meet together and reduce their contracts to writing, the writing itself is viewed by the law as the evidence of what the agreement was between them, and that whatever is not in the contract is no part of the written agreement; that what is not found in the writing is presumed to have been abandoned by the one party or the other, unless it appears by clear, precise, convincing and satisfactory proof that the part which it is alleged is not in the contract, was not in it because of some fraud, or by accident left out, or by mistake of the parties was not incorporated therein. It is true that there are contracts ofttimes made by parties, where the conversation, the part that took place between the parties at the time they were entering into the contract, may be admitted for the purpose of explaining something in the contract, which, of itself, is left doubtful. It is true that ofttimes, as the court has said, parol evidence is admissible to show a contemporaneous agreement which induced the execution of the written obligation.

Now it is claimed on the part of the plaintiff here, that his signature to this agreement of December 2, 1882, was induced and procured by the fact, as he claims, that he was to have these logs, or hold the logs, as security for his money; that it was that which caused him to sign this agreement. Gentlemen of the jury, we submit that question of fact to you. We say to you first, that the written agreement, the law says, is the contract between the parties, and that when any person seeks to change a contract in writing he must do it by clear, precise and indubitable proof. And by that kind or measure

of proof is meant, that the source from which the testimony comes must be credible; the statements of the witnesses must be clear and distinct as to what was said and done : and, altogether, it must be of a character to convince the minds of the jury that the part claimed was omitted either by fraud, accident or mistake of the parties, or, if not so kept out of the contract, that the party who complains of the omission was induced to sign the contract by the statement or the contemporaneous agreement made at the time the contract was signed. We are not to look for testimony that is beyond all doubt, as that would be requiring a measure of proof that the law does not require.

In order that the written contract between the parties may not be frittered away upon the mere statement of one party that something was omitted from the contract that ought to have been put in it, the law does require that the party who claims that an essential part of the contract is not contained in the writing must satisfy the jury by proof that is clear, precise and directly to the point, that his signature was procured or induced by the part omitted, or that the part was omitted by the fraud of the other party, or by the accident or mistake of the scrivener in not putting it in; and, it therefore, becomes a very essential and important inquiry at this stage of the case to know what was the agreement between them.

We say to you that as to all of the 150,000 or 155,000 feet of logs that were at Curry Run at the time this writ of replevin was executed, under this written agreement the plaintiff could not maintain this action. His right to maintain the lien was gone by the removal of these logs from the land where they were cut, and he had no lien at common law for his money on the logs, if the written agreement is the agreement between the parties. He has no lien reserved to him in the written agreement; therefore, when these logs were moved off the land where they were cut, his lien at common law was gone, and he could not recover them or hold them by this writ of replevin unless this contemporaneous parol agreement, that he alleges, was left out of this contract by the fraud of Ferguson who wrote it, or his signature was procured to the contract as it now is by the assertion or declaration of Ferguson, in that contemporaneous parol agreement, that it was not necessary and that he (plaintiff) could hold the logs without it.

Now what is the testimony upon that subject? You have the contract, but it does not contain any such provision. To overcome that contract there must be testimony of the kind we have spoken of. You have the testimony of two witnesses upon that subject. First, the testimony of Thomas L. Rafferty. He is interested in the result of this trial, and his testimony necessarily requires close and careful scrutiny on your part. We have also the testimony of E. W. Hepburn, who, so far as we know, has no interest whatever in this case, and his testimony is to be considered by the jury. [On the other side, we have the testimony of D. L. Ferguson (who is a party to this contract, and is, of course, also interested), who says that no other arrangement was made than this written contract.] [20] Then you have the testimony of Thomas L. Rafferty and the testimony of E. W. Hepburn, as to what occurred. The only other person who was present at the time this contract was made, and who has not testified, is, it seems, out of the state, and his testimony could not be taken or procured on a commission. So that you have the testimony, on the one side, of the contract in writing,—silent on the subject; and on the other, you have the testimony of E. W. Hepburn, who is an entirely disinterested witness, and is entirely credible, his reputation for truth and veracity not being attacked. If you are convinced that his statements are clear as to what occurred there; that he has stated what did occur, and has made no mistake about that, it would weigh in your consideration in coming to a conclusion, and you would have a right to attach importance to his testimony. But, from all of the testimony on that subject and the written contract, we say to you that you must be convinced, the proof must be satisfactory to your minds, that this essential part of the contract thus omitted was the inducing cause that led Mr. Rafferty to sign this written contract. If it was so left out, and his signature to this written agreement was procured in that way, then we say to you that he would have a lien, and the right to issue a writ of replevin for the whole of these logs, not only for those that were on the land, but for those that were at Curry Run, at the time this writ of replevin was executed.

It is alleged on the part of the defendant, that he is an innocent purchaser, without notice, of any kind, of this claim of Mr.

Charge of Court below.

Rafferty; that he purchased this property at sheriff's sale, and that, therefore, under the law, he is protected from any secret lien that may have existed in Thomas L. Rafferty against D. L. Ferguson. The law does abhor secret liens. It is not the policy of the law to encourage them. But it is claimed on the part of the plaintiff in this case, that at the time of this sale, written notice was given to bidders or purchasers, of the rights of Mr. Rafferty (plaintiff) and his determination to hold these logs until the purchase money was paid. The notice has been offered in evidence, and has been read to you. The sheriff identified it as the notice that was served upon him, and he says in his testimony, so far as he testifies on this subject, that he thinks it was read, although he is not positive. The testimony of Mr. McKenrick on this subject is that he read that notice. Mr. Ferguson says he did not hear it, or does not recollect of hearing it. Now, if this notice was read there, notice given to bidders and purchasers, then he would not stand in the position of an innocent purchaser, and he would not be protected from this claim of Mr. Rafferty, and Mr. Rafferty would have a claim upon them until he got his purchase money. All that is to be considered by you in determining whether he had such notice as would put a prudent man upon inquiry. It is also important in view of the fact that the levy upon these logs was a levy upon the interest of D. L. Ferguson in those logs, and therefore, if he (Ferguson) had no interest in them, the purchaser would get nothing. Purchasers ordinarily at a sheriff's sale only buy such interest as the defendant in the execution has in the property levied upon. Purchasers are protected against all secret liens or equities that may exist in other parties, of which they have had no notice; therefore it becomes important in this case to ascertain whether or not John B. Ferguson had notice of the claim of the plaintiff.

    \*    \*    \*    \*    \*    \*    \*    \*

The defendant has requested us to instruct you in regard to the following propositions of law:

1. It is a recognized principle, and a well established rule of law, that a judicial sale of a chattel discharges all secret liens, and is free from all secret equities and liens in the hands of the purchaser at such sale without valid notice thereof.

Answer: We affirm this point.

Charge of Court below.

2. The notice purporting to have been read at the sheriff's sale of the logs in controversy, by J. F. McKenrick, the attorney of the plaintiff, was not sufficiently explicit and definite as to its nature and character, as it would render the logs liable to the claim of the plaintiff in the hands of John B. Ferguson, the purchaser of the same at the said sheriff's sale.

Answer: We cannot give an unqualified affirmance to that proposition. We think the notice was sufficient to have put an ordinarily prudent man upon inquiry as to what the interest was, if it was read, as the plaintiff claims.[7]

3. That under the written contracts between the plaintiff and Hoover and Hepburn, and between plaintiff and D. L. Ferguson, for the purchase and sale of the logs in controversy, the plaintiff had no such lien or right of property, and right to exclusive possession of the logs, as would enable him to maintain this action.

Answer: Under the written agreements alone, as we have said to you, he would not have had, except as to the logs still remaining upon the land, and we affirm this point with that single qualification.[8]

4. That it appears from the evidence offered by the plaintiff, that the land on which this timber grew, and the timber itself, was the property of James Rafferty, who died seised thereof, unmarried, intestate and without issue; that thereupon the said property, under the intestate laws of this commonwealth, vested in his brothers and sisters, to wit: John B. Rafferty, Nelson Rafferty, David Rafferty, Francis E. Rafferty, Thomas L. Rafferty, Mary Jane Rafferty, and Mrs. Farrel, as tenants in common, and the interest, property and share of the plaintiff in said land and timber, was the one undivided seventh part, subject to the life estate of Martha Rafferty, mother of said James Rafferty.

5. That the alleged contract between Richard Danver, as guardian of Nelson and David Rafferty, and plaintiff, was for the sale of an interest in realty, which said Danver has not been shown to have had any legal right to sell, he not appearing to have been authorized so to sell the same by the Orphans' Court which appointed him trustee of said Nelson and David Rafferty, and being without warrant or authority in law, conveyed no valid title to the timber to the plaintiff.

6. That the plaintiff having testified that he knew that the property and timber in controversy upon the death of his brother James descended equally to him, his brothers and sisters or their heirs, and that he had not negotiated with or made any purchase of any interest or share therein, excepting by his contract with said Richard Danver, he had but an undivided interest therein as tenant in common with his brothers and sisters and their descendants, and he cannot maintain this action for the whole of said logs or the value thereof.

7. The plaintiff being but a tenant in common of the logs in controversy, and not having the exclusive right in himself to the possession and property in and to said logs, and not having joined his cotenants in this action, he cannot maintain the same in his name, and your verdict must be for the defendant.

· The fourth, fifth, sixth and seventh points we reserve, as they involve questions of law.

8. That under the terms of the written contract for the sale of this timber, the plaintiff had not any lien upon these logs, such as' would enable him to maintain this action after the same were severed; that the said contract being clear, explicit, unambiguous and complete in its terms, the same cannot be varied, added to or contradicted by any contemporaneous parol agreement, without proof that such contemporaneous parol provision was left out of it by fraud, accident or mistake.

Answer: Ordinarily that is a true statement of the law, gentlemen of the jury, but in addition to these causes, fraud, accident or mistake, if the signature of the plaintiff to that agreement between himself and D. L. Ferguson, was procured by reason of the contemporaneous parol agreement, as said by us, then that may be considered as changing the rights of these parties.[9]

9. That the alleged contemporaneous parol provision, that the plaintiff was to retain the property in the logs as security for his pay, cannot now be incorporated in it or made a part of said contract in the absence of proof that the same was left out of the written contract by fraud, accident or mistake.

Answer: As a statement of the law, that is true. As applicable to the facts in this case, it must be considered in the light of the testimony on that point. As we have said to you, if his signature was procured through the declaration of Mr. ·

Ferguson that it was not necessary, and if the two witnesses were called upon to witness that he had the logs as security, and that fact was the moving cause that induced him to sign that written agreement, then that written agreement would be changed and modified by this parol agreement to the extent that he claims. But if that was not the inducing cause of his signature, then there must be proof that it was left out by accident, or mistake or by the fraud of Ferguson.[10]

10. That the plaintiff having failed to show that the alleged contemporaneous parol provision, that he was to retain said logs as security for his pay, was left out of the written contract by fraud, accident or mistake, and he having failed to testify that but for the making of such parol condition he would not have signed the contract, the same cannot now be permitted to be incorporated into or made part of it, and the written contract must be taken as the actual and only contract between the parties.

Answer: Gentlemen of the jury, you heard the testimony of the plaintiff. We cannot say, as a matter of fact here, that he failed to testify that this parol contract was left out of the written one; that is a question for you. He testified, in answer to the question, when I asked him why he signed that agreement, that it was because of this conversation about the security for the logs, or that he held the logs as security. His testimony was read to you by the counsel, and you will remember what it is.[11]

11. That under the terms of said written contract the plaintiff had no such lien upon the logs in controversy, or exclusive right of property and possession, as would enable him to maintain this action, and your verdict must be for the defendant.

Answer: Under the terms of the written contract that is true, but we have already reserved the points mentioned covering this legal proposition, and have already instructed you that for the purposes of this trial he can maintain the action.[12]

12. That even if the testimony of the plaintiff and E. W. Hepburn, regarding the contemporaneous parol provision between the plaintiff and D. L. Ferguson is believed, such evidence is not clear, precise and indubitable, and therefore cannot be incorporated in or made a part of the contract between the parties.

Charge of Court below.

Answer: We do not understand exactly what is meant by that, because if the testimony is believed by the jury, and it can only be believed by the jury upon satisfactory proof, but if it is believed it would be sufficient, and we cannot affirm this point, and must therefore refuse it. The jury are not to hastily conclude that it is true, but are to inquire into the proof, and the proof must be credible; it must come from a credible source, and it must be from witnesses whose statements of what occurred are clear and distinct. If after that it is believed, then it is sufficient to change this contract, and would be admissible for that purpose.[13]

13. That in order to vary, alter, amend or contradict a written instrument, the evidence must be so clear, precise and indubitable, that it would move a chancellor to reform the instrument.

Answer: We affirm this point.

14. That the testimony of Thomas L. Rafferty and E. W. Hepburn, in this case, being contradicted by D. L. Ferguson and the written contract itself, the evidence to vary, alter, amend or contradict the written contract is not clear, precise and indubitable, and the verdict must be for the defendant.

Answer: We refuse this point. Of course, the fact that the contract is contradicted by Rafferty and Hepburn, and that Ferguson's testimony seems to be corroborated by it, is for the jury. We cannot say, as a matter of fact, that because the testimony of Rafferty and Hepburn is contradicted by Ferguson, that therefore you must disbelieve Rafferty and Hepburn. In order that their testimony shall be of sufficient weight to incorporate in this written agreement, the contemporaneous parol agreement, it must be clear, precise, satisfactory and convincing to the jury.[14]

18. That Martha Rafferty, the mother of James Rafferty, who died intestate, seised of the land in fee, upon which the timber in controversy grew, had not such title or ownership in the valuable growing pine timber on said land, as would authorize her to make a valid sale of the whole of the timber on said tract, as was done in this case, or that would render her ratification of the sale made to plaintiff by Richard Danver, as guardian, valid to carry any title to the timber.

Answer: That is purely a question of law, and we reserve that with the other propositions already reserved.[15]

19. That under all the evidence and pleadings in this case, your verdict must be for the defendant.

. Answer: Gentlemen of the jury, we cannot so instruct you. We cannot say that under all the evidence the verdict must be for the defendant; but we submit the case to you to determine whether or not this written agreement was changed, and whether at the time this written agreement was made or given, the cause of Rafferty's signing it was, that he was to hold these logs until he got his money. If it was, and you are so satisfied by the proof, convinced that that is the fact, then this writ of replevin, as we have said, may be maintained for the logs. If you are not so satisfied from the evidence, and there were any of these logs upon the land, and the testimony would seem to indicate that there were from 90,000 to 95,000 feet, then he may maintain this action by reason of his common law lien without any agreement, written or verbal, providing, in both these instances, John B. Ferguson had sufficient notice to put him upon inquiry as to what the interest of D. L. Ferguson in these logs was at the time of the sheriff's sale.[16]

The jury returned a verdict in favor of the plaintiff for $1,725.25, subject to the questions of law reserved. After argument, judgment was entered on the verdict in favor of the plaintiff, the court, KREBS, P. J., filing an opinion, wherein after citing and discussing Reinheimer v. Hemingway, 35 Pa. 432; Mathias v. Sellers, 86 Pa. 486; Rogers v. Arnold, 12 Wend. 30; Hart v. Fitzgerald, 2 Mass. 511; Lester v. McDowell, 18 Pa. 91; Miller v. Warden, 111 Pa. 300; Harlan v. Harlan, 15 Pa. 507; Mead v. Kilday, 2 W. 110; Young v. Kimball, 23 Pa. 195; Snyder v. Vaux, 2 R. 425; Mather v. Trinity Church, 3 S. & R. 509; Brown v. Caldwell, 10 S. & R. 114; Baker v. Howell, 6 S. & R. 476; Irvine v. Hamlin, 10 S. & R. 220, concluded:

In view of these authorities I do not give much weight to expressions and dictum that the plaintiff in replevin must show an absolute or perfect legal title in himself. The possession of one co-tenant is the possession of the remaining co-tenants; and, assuming that there was nothing in the case but the acquiescence of the co-tenants in the plaintiff's entry upon the land and sale of this timber, why should the defendant defeat

his recovery here, when he does not allege or show any con-
nection with the title of the co-tenants? If the plaintiff sold
this timber without the consent of his co-tenants, they could
have stopped its cutting, under the act of assembly of May 4,
1869, [P. L. 1251], §§ 1 and 2; but if they choose to waive
that right and suffer. the co-tenant to sell it, and he may by
express stipulation reserve a lien which he might assert and
hold the timber until paid for, if he was the sole owner, why
may he not assert this lien and hold the timber against his
vendee and those claiming under him and not asserting or al-
leging any greater title than his own?

Under the facts found by the jury in this case I am of the
opinion the defendant's position ought not to prevail. The ac-
tion of Mr. Danver, the acquiescence therein by the co-tenants
of the plaintiff, the express assent of the life tenant, the entry
of a judgment against the plaintiff for the use of the co-tenants
for the purchase money, in my opinion give the plaintiff such
an ownership and right of possession to the property in dispute
that will enable him to hold the logs under the lien reserved
as found by the jury; and the defendant, not being an innocent
purchaser, it does not lie in his mouth to set up the title in
co-tenants, with whom he alleges no connection whatever. I
will therefore enter judgment upon the reserved questions in
favor of the plaintiff.[17]

And now July 3, 1888, it is ordered that judgment be en-
tered on the verdict in favor of the plaintiff and against the
defendant upon payment of the jury fee.[18]

Judgment having been entered on the verdict, the defendant
took this writ, assigning as error, inter alia:

4, 6. The admission of plaintiff's offers.[4] [6]

7–16. The answers to defendant's points.[7 to 16]

17. The refusal to affirm defendant's points 4, 5, 6, 7, 18.[17]

18, 19. The entry of judgment in favor of the plaintiff and
not in favor for the defendant.[18]

20. The portion of the charge embraced in [ ] [20]

*Mr. Frank Fielding* (with him *Mr. S. T. McCormick* and *Mr.
R. D. Swoope*), for the plaintiff in error:

1. The written contract between the plaintiff and D. L. Fer-

guson being explicit, unequivocal and complete in all its terms, parol evidence was inadmissible to vary it, by adding to its terms an agreement for a lien: Coen v. Adamson, 9 Cent. R. 20; Bowman v. Tagg, 6 Cent. R. 563; Lane's App., 112 Pa. 499. Testimony as to the motives and intentions of the parties is not receivable: Juniata Building Ass'n v. Hetzel, 103 Pa. 512; Dillon v. Anderson, 43 N. Y. 231; Spencer v. Colt, 89 Pa. 314. There was no evidence of fraud, accident or mistake, nor can it reasonably be inferred that the plaintiff would not have signed the contract except for the conversation to which he testified. The evidence offered to establish the verbal stipulation was not sufficiently clear, precise and indubitable as to justify its submission to the jury: North v. Williams, 120 Pa. 118; Murray v. Railroad Co., 103 Pa. 42; Phillips v. Meily, 106 Pa. 536; Sylvius v. Kosek, 117 Pa. 67; Penna. R. Co. v. Shay, 82 Pa. 198. It was not sufficient to overcome the written contract and the testimony of D. L. Ferguson, whom the court erroneously characterized in the charge as an interested party.

2. The notice read at the sheriff's sale was not sufficient to put the defendant upon inquiry as to a secret lien, existing under a parol contract not mentioned in the notice nor in the agreement to which it referred bidders. The answer to the nineteenth point was erroneous because the contract of sale was a severance making the timber personalty, and the plaintiff had parted with any possession he had of it: Welsh v. Bell, 32 Pa. 12; Brunswick v. Hoover, 10 W. N. 219; Stadtfeld v. Huntsman, 10 W. N. 217; Harris v. Smith, 3 S. & R. 23; Bowen v. Burk, 13 Pa. 148. Nor had he possession of or sole title to the land, and he could not recover in replevin on the strength of an undivided one seventh interest in the timber. The plea of property imposes on him the necessity of establishing his title and the right of exclusive possession; he must recover on the strength of his own title, not on the weakness of his adversary's, and one tenant in common of a chattel cannot maintain the action without joining his co-tenants, the non-joinder of whom need not be pleaded in abatement: Reinheimer v. Hemingway, 35 Pa. 432; Mathias v. Sellers, 86 Pa. 492.

*Mr. J. F. McKenrick* (with him *Mr. A. L. Cole* and *Mr. Cyrus Gordon*), for the defendant in error:

1. James Rafferty in his lifetime used this land for taking timber off it, and it was not productive or valuable for any other purpose. Martha Rafferty as life-tenant, therefore, had a right to sell this timber for her use and profit, and, if she chose to do so through Richard Danver, who was a trustee for some of the reversioners, such sale was not waste : Williard v. Williard, 56 Pa. 119; Neel·v. Neel, 19 Pa. 323. Moreover, it does not lie in the mouth of the defendant to question the plaintiff's right : Buckley v. Handy, 2 Miles 449.

2. The testimony of the plaintiff as to the contemporaneous parol agreement meets all the requirements of the rule laid down in Spencer v. Colt, 89 Pa. 318, and he is fully corroborated by Hepburn. It can only be claimed by inference that D. L. Ferguson contradicts them, as he does not say there was no parol stipulation included in the supplemental agreement. The evidence was properly submitted to the jury : Walker v. France, 112 Pa. 203 ; Thomas v. Loose, 114 Pa. 35. The evidence comes within the. rule laid down in Sylvius v. Kosek, 117 Pa. 67. The other cases cited for plaintiff in error are not applicable, being cases where there was no corroboration.

3. A stipulation reserving title until payment, is valid as between the parties and against others with notice, though possession be delivered : Benj. on Sales, §§ 334, 425 ; 2 Kent. Com., § 497 ; Winslow v. Leonard, 24 Pa. 14. The notice given at the sheriff's sale sufficiently put the defendant on inquiry to prevent his being considered a bona fide purchaser : Leonard's App., 94 Pa. 168 ; Bugbee's App., 110 Pa. 331 ; Hottenstein v. Lerch, 104 Pa. 454. The facts in Reinheimer v. Hemingway and Mathias v. Sellers relied on by defendant to sustain his position that replevin cannot be maintained by one co-tenant, are entirely different from those of. the case at bar. There are numerous decisions to the effect that a qualified property, coupled with a right of possession, is sufficient : Mead v. Kilday, 2 W. 110 ; Harlan v. Harlan, 15 Pa. 507 ; Young v. Kimball, 23 Pa. 193 ; Miller v. Warden, 111 Pa. 300 ; Snyder v. Vaux, 2 R. 425. The facts bring the plaintiff within this rule. Moreover, under his plea he cannot assert any better title than he obtained at the sheriff's sale, and he therefore cannot raise the question of the life-tenant's right to sell the timber.

OPINION, MR. JUSTICE GREEN:

The rather numerous assignments of error in this case may be considered under a few heads.

First. Those which relate to the admission and effect of parol testimony to change the written contract. These embrace the assignments numbered 4, 6, 8, 9, 10, 11, 12, 13, and 20.

The learned court below, both in admitting the parol testimony and in submitting it to the jury, stated the law with great care and caution, and with entire correctness. It was stated repeatedly in the charge that, in the first instance, the written contract of the parties must be regarded as the whole of their contract, and that it cannot be altered or changed by parol testimony of what occurred at the execution of the writing, except by proof, which the learned judge thus defines: "We say to you, first, that the written agreement, the law says, is the contract between the parties, and that when any person seeks to change a contract in writing, he must do it by clear, precise, and indubitable proof. And, by that kind or measure of proof, is meant, that the source from which the testimony comes must be credible; the statements of the witnesses must be clear and distinct as to what was said and done, and, altogether, it must be of a character to convince the minds of the jury that the part claimed was omitted, either by fraud, accident, or mistake of the parties, or, if not so kept out of the contract, that the party who complains of the omission was induced to sign the contract by the statement or the contemporaneous agreement made at the time the contract was signed. We are not to look for testimony that is beyond all doubt, as that would be requiring a measure of proof that the law does not require." There was more of the same kind of direction, and it was accompanied by a very lucid and perfectly impartial presentment of the testimony on both sides, and concluded by a repetition of the caution that the jury must be convinced that the witnesses stated what actually did occur at the time of the execution of the contract; that they were not mistaken in their testimony, and that the essential part of the contract thus omitted was the inducing cause that led the plaintiff to sign the written contract. It is not necessary to review the numerous cases in which this subject has been discussed and the fore-

going principles announced. They are well illustrated in the cases of Walker v. France, 112 Pa. 203 and Thomas v. Loose, 114 Pa. 35. In the latter case we said: "Parol evidence is admissible to establish a contemporaneous oral agreement which induced the execution of a written contract, though it may vary, change, or reform the instrument. It has been often said that such oral agreement must be shown by evidence that is clear, precise, and indubitable; that is, it shall be found that the witnesses are credible, that they distinctly remember the facts to which they testify, that they narrate the details exactly, and that their statements are true. Absolute certainty is out of the question."

The law having been defined by the learned court below with entire accuracy, the only remaining question is, whether there was evidence in the case of a character proper to be submitted to the jury for their action. The evidence consisted of the written contract and the testimony of one witness, D. L. Ferguson, on the one side, and the testimony of two witnesses, T. L. Rafferty and E. W. Hepburn on the other. The written contract contains no reference to the verbal stipulation which, it is alleged by the plaintiff, formed part of the real contract of the parties, and induced the plaintiff to sign it. Rafferty had made an agreement with Hepburn and Hoover for the sale of a quantity of white pine timber on a designated tract of ninety acres. The contract in question here was, in substance, a release by Rafferty to Hepburn and Hoover of their obligation under the original written agreement by him with them, and a transfer of the same to D. L. Ferguson. There was an added modification of the original agreement changing the price to be paid for the logs which were to be cut. There was no stipulation for security to Rafferty, the vendor, in the original contract, and there was none in the written agreement with D. L. Ferguson. But the plaintiff, Rafferty, alleges that he was not willing to make the transfer to Ferguson unless he had security for the payment of the purchase-money, and whether there was an agreement for such security, made verbally, but omitted from the writing, was the question in controversy.

The oral testimony on that subject was delivered by Rafferty and Hepburn for the plaintiff, and by D. L. Ferguson for the

defendant. Rafferty, being examined, testified, inter alia, as follows: "Q. Now what did Hepburn and Hoover do with this timber after the sale of it by you to them? A. They came to me and wanted to sell it to D. L. Ferguson—they wanted to know if I would release them and take D. L. Ferguson—I told them I did not care if I would be secured on the logs. So we went and wrote the article out. Q. Where was this conversation? A. My recollection is that it was made at 'Ras Hepburn's house. 'Q. Who was there at the time? A. Bill Hoover, 'Ras Hepburn, Ferguson, and I. Q. What did you do when you met there? A. He wrote out the article. Q. Who wrote it? A. D. L. Ferguson wrote it himself; it was written on the bottom of the old article. Q. You have testified that when Hepburn spoke to you about making this change you stated that you would if you had security? A. Yes, sir. Q. Who was present then at Hepburn's house at that time? A. 'Ras Hepburn, Bill Hoover, and Ferguson. Q. State what was said there about the transfer of this agreement? A. Why, I told them that I would let them have the logs if they would give me security; he said he would let me have the logs as security. Q. Did you then proceed to make a written contract? A. Yes, sir. Q. After he drew it did you sign it? A. Yes, sir. Q. Was there anything said then? A. I asked him where the written security was, and he said the logs was security—that Hepburn and Hoover was witnesses. I asked him to put it in the article, but Ferguson said witnesses was as good as if it was in the article. (Repetition of part of answer.) A. Yes, sir, of course I did not know it then; that is what he told me, that the witnesses was just as good as the article. By the Court: What was the reason that you signed this agreement? A. Why did I sign it? Because they wanted the loosing of it, and I thought if I would give him (Ferguson) the agreement and have the logs for security it would be all right. Q. When you found that this security that you spoke of was not in the contract, why did you sign it? A. He said the logs would be good for security; he told me he would give me security and I signed it. I asked him what the security was, and he said the logs was security; he told me that before, and then afterwards that the logs were security."

Under this testimony it can hardly be said there was any

fraud, accident, or mistake, except mistake of law, in omitting the verbal agreement for security from the written contract.

It was omitted in fact, and the plaintiff knew it, and assented to the verbal agreement for security. But it seems quite certain that Rafferty was induced to sign the written contract by means of the verbal agreement, and there is at least ample testimony to justify the jury in finding that such was the fact. It is still necessary, however, to recur to the other evidence in order to determine whether upon the whole it conforms to the legal requirements in such cases. E. W. Hepburn, another and a disinterested witness, was examined, and testified as follows: "Q. Did you go and see Levi Rafferty and talk to him before you made this transfer to D. L. Ferguson? A. Yes, sir. Q. Where was this contract of December 2, 1882, made? A. At my place. Q. Who was present at your place at that time? A. Nobody but the four of us, W. C. Hoover, D. L. Ferguson, T. L. Rafferty, and myself. Q. Who wrote that contract? A. D. L. Ferguson. Q. What, if anything, was said there between Ferguson and Rafferty with reference to security for the logs mentioned in that contract? State what occurred there and what was said by the parties in that room. A. There was not a great deal said about it. When Rafferty allowed (insisted) he ought to have some security for the logs—that was either before or after this was written out—I don't know which, but I rather think before it was signed— Mr. Ferguson told him he could hold the logs until he got the money; he allowed he ought to have something in the agreement, and Ferguson allowed that witnesses were as good as a bargain. . . . . Q. Was your attention called to this as a witness? A. Yes, sir; he said Mr. Hoover and Mr. Hepburn could witness it. I was sitting between Ferguson and Levi Rafferty."

This testimony is corroborative of that of the plaintiff, and would also justify an inference that the signature of Rafferty was obtained by means of the verbal agreement in regard to the security.

The testimony of Hoover was not taken, and the only remaining evidence as to what occurred at the time of the execution of the written contract is the testimony of D. L. Ferguson, the other party to the contract. He says he was

present with the other parties named, when the agreement be-
tween himself and Rafferty was made, but gives no testimony
whatever as to what was said at the time.    There is but a sin-
gle sentence in the whole of his testimony that relates in any
manner to what was said by the parties when the contract was
signed, and it is in these words : " There was no other contract
made except that made in the supplemental agreement."    Just
what he means by this is not explained.    The question to
which the above was an answer is not printed, and it cannot
be known whether his attention was called to the testimony of
Rafferty and Hepburn as to the verbal agreement about se-
curity or not.    Whether he meant to say there was no other
written contract than the supplemental agreement we cannot
know, but certain it is that his testimony as it stands means
at the utmost nothing more than that in his opinion there was
no other contract made than the supplemental agreement.    He
contradicts nothing that was testified to by Rafferty and Hep-
burn, although he wrote the agreement, was himself a party
to it, and was present during the whole of the time of its prep-
aration and execution.    Such silence in the face of the opposing
testimony is much more than mere negative testimony.    It is
highly persuasive evidence that the conversation testified to
by the other witnesses actually took place just as they stated it.

The case then stands with the direct, positive, and uncon-
tradicted evidence of two witnesses to the fact of the contem-
poraneous verbal agreement, and the non-denial of it by the
other party.    The testimony is precise, definite, distinct, posi-
tive ; the witnesses are not impeached or contradicted in any
manner, and the story they tell is highly probable and reason-
able.    If their testimony is believed it is of an indubitable
character in legal effect, and fully warrants the inference that
the signature of Rafferty was obtained by means of the verbal
agreement.    This brings the case within the frequent rulings
of this court on this subject, and justifies the learned court be-
low in their action in admitting the evidence and in their
treatment of it in the charge and answers to points.    These
several assignments of error are not sustained.

There is no merit in the seventh assignment.    The notice
was at least sufficient to put an intending purchaser upon in-
quiry, and the whole question as to whether it was read at the

sheriff's sale and the defendant had opportunity to hear it, was very fairly treated in the general charge. The notice contained a distinct claim of title to the logs in Rafferty, and a prudent man inquiring of him, as he would be bound to do, would, it must be presumed, have been informed of the particular kind of title claimed and of the facts upon which it was based.

Seventeenth assignment, which covers also the eighteenth and nineteenth. These all relate to the right of the plaintiff to maintain the action of replevin in his own name, without joining others who appear to be co-tenants in common with him of the land from which the logs were cut. The action was not brought by the plaintiff as one of several tenants in common to recover his undivided portion of the logs, but he asserted his right to recover and sought to recover the whole of the logs. The defendant claimed title to the whole of the logs under a sheriff's sale of the title of D. L. Ferguson, and D. L. Ferguson's title was derived exclusively from the sale made to him by the plaintiff. The defendant being a purchaser with notice of the plaintiff's claim of title, is in no better position than D. L. Ferguson would have been if he had been the defendant. He at least took the logs and all the title he had to them came directly from the plaintiff. The sale was at least sufficient to pass over the logs to D. L. Ferguson, who actually took possession of the whole of them under his contract of sale with the plaintiff. The latter certainly had title enough to enable D. L. Ferguson, and through him the defendant, to get possession of the logs. In point of fact, neither D. L. Ferguson nor the defendant was ever molested or interfered with in any way, either in the taking or holding possession of the logs, or any of them, by any of the alleged co-tenants in common of the plaintiff, although five or six years had elapsed from the cutting at the time of the trial. Moreover, although Danver, who sold the timber to the plaintiff, was named in the contract of sale as guardian of two of the brothers of James Rafferty, who was the owner of the land from which the logs were cut at the time of his death, he assumed to sell the whole of the timber claiming he had a right to do so. Mrs. Martha Rafferty, who, as the mother of James, was tenant for life of the land and paid the taxes on it, testified that it was timber land, part

of which had been cut off before her husband bought it, and that she consented to the sale of the timber by Danver to T. L. Rafferty, the plaintiff. Danver took a judgment note as trustee from T. L. Rafferty for $1,100, the whole of the purchase money of the timber, and entered it of record at once. None of the co-tenants ever made objection to the sale or set up any title to the timber against either D. L. Ferguson or the defendant.

We think it clear from these facts that the plaintiff must be regarded as seeking to recover upon the whole title to the logs, with evidence of consent of the other parties in interest; especially of his mother, who, quite possibly, had a legal right as tenant for life to cut off all the timber, that being the main profit of the land: Williard v. Williard, 56 Pa. 119. This being so, his right to recover cannot be disposed of upon the assumption that he is simply one of several tenants in common seeking to recover for his undivided interest only, and authorities to the effect that no recovery can be had upon such a title do not determine the case. It seems to us quite plain that, as between himself and D. L. Ferguson, or the defendant with notice, he had the right to the possession for the security of the purchase money, and at least a qualified title to the logs. In such circumstances the authorities are plain, that there may be a recovery. In Harlan v. Harlan, 15 Pa. 507, we said: "It is well settled as a general principle, that in Pennsylvania replevin lies wherever one man claims goods in the possession of another, and this, whether the claimant has ever had possession or not, and whether his property in the goods be absolute or qualified, provided he has the right of possession." The same doctrine is repeated in Miller v. Warden, 111 Pa. 300, and in other cases. The case of Reinheimer v. Hemingway, 35 Pa. 432, is not in point, as it presents a different question growing out of entirely different facts. The defendant here sets up no adverse title to the logs, whether derived from a stranger or from any of the co-tenants. He literally claims upon the very title which he derived from the plaintiff, and seeks to impeach it for the mere purpose of avoiding payment of the purchase money, which he certainly cannot do. He never has been evicted from his possession which the plaintiff gave him, nor has his title even been threatened, yet he proposes to keep both

the logs and their purchase money, upon the mere allegation that others are interested in the logs with the plaintiff, although there is satisfactory evidence of their assent to the plaintiff's action and claim of title. These several assignments of error are not sustained.

The remaining assignments are without merit and are dismissed. The case was tried with much care, and an extremely lucid and able charge was delivered to the jury. It has been argued in this court with great force and ability by the learned counsel on both sides. It seems to us substantial justice has been done, and we are not convinced that any error occurred on the trial.

Judgment affirmed.