HUTSON COAL CO. v. ANN HUGHES ET AL.

1. PROPER PARTIES PLAINTIFF IN ACTION TO RECOVER ROYALTY.

An action to recover for the royalty due upon a sale of coal in place, is·
a personal action, and must be brought in the name of the personal
representative and not in the name of the heirs at law, although the
estate is otherwise fully settled up.

[For other cases in point, see 4 Cyc. Dig., "Executors and Administrators,"
§§ 178-181.—Ed.]

2. WHEN PHRASE USED IN CONTRACT MAY BE EXPLAINED BY PAROL EVIDENCE.

Where a contract for the sale of coal in place provides that royalty shall
be paid upon all merchantable coal mined, parol evidence is admissible
to show that in the locality where the coal was situate and the con-
tract made, the phrase "merchantable coal" had a special signification
and was so used and understood by the parties to the contract

[For other cases in point, see 4 Cyc. Dig., "Evidence," §§ 3061-3067.—Ed.]
[Syllabus by the court.]

**W. J. Beckley, T. H. Johnson** and **A. T. Hills,** for plaintiff in
error:

Cited and commented upon the following authorities: *Edwards
v. McClurg,* 39 Ohio St. 41; *Manning* v. *Frazier,* 96 Ill. 279; *Caldwell
v. Fulton,* 31 Pa. St. 475 [72 Am. Dec. 760]; *Sanderson* v. *Scranton,*
105 Pa. St. 469; *Delaware, L. & W. Ry.* v. *Sanderson,* 109 Pa. St. 583
[1 Atl. Rep. 394]; *Dunham* v. *Haggerty,* 110 Pa. St. 560 [1 Atl. Rep.
667]; *Montooth* v. *Gamble,* 123 Pa. St. 240 [16 Atl. Rep. 594]; *Fair-
child* v. *Furnace Co.* 128 Pa. St. 485 [18 Atl. Rep. 443, 444]; *Kingsley
v. Coal & Iron Co.* 144 Pa. St. 613 [23 Atl. Rep. 250]; *Lazarus, In re,*
145 Pa. St. 1 [23 Atl. Rep. 372]; *Plummer* v. *Coal & Iron Co.* 160 Pa.
St. 483 [28 Atl. Rep. 853]; *Plummer* v. *Coal & Iron Co.* 104 Fed. Rep.
208 [43 C. C. A. 490]; 20 Am. & Eng. Enc. Law (2 ed.) 584; *Cullom
v. Bim,* 37 Ohio St. 236; 2 Mechem, Sales Sec. 1340; 2 Benjamin, Sales
(rev. ed.) Secs. 983, 984; *Wright* v. *Coal Co.* 122 Pa. St. 514 [38 Atl.
Rep. 491]; *Chicago, G. W. Ry.* v. *Railway,* 101 Fed. Rep. 792 [42 C.
C. A. 25]; *Topliff* v. *Topliff,* 5 O. F. D. 663 [122 U. S. 121; 7 Sup. Ct.
Rep. 1057; 30 L. Ed. 1110]; *Manhattan Life Ins. Co.* v. *Wright,* 126
Fed. Rep. 82; *Givens* v. *Coal Co.* 22 Ky. App. 1217 [60 S. W. Rep.
304]; *McBride* v. *Vance,* 73 Ohio St. 258; *Weyer* v. *Watt,* 48 Ohio St.
545 [28 N. E. Rep. 670]; Revised Statute 6189 (Lan. 9731); *Pacific
Coast Elev. Co.* v. *Bravinder,* 14 Wash. 315 [44 Pac. Rep. 544]; *Riggs
v. Armstrong,* 23 W. Va. 760; *Reed* v. *Randall,* 29 N. Y. 358 [86 Am.

Portage County.

Dec. 305]; *Tenny* v. *Mulvaney*, 9 Ore. 405; *Fitch* v. *Carpenter*, 43 Barb. 40; *Cullen* v. *Bimm*, 37 Ohio• St. 236; *Cincinnati* v. *Gas Light & C. Co.* 53 Ohio ˙St. 278 [41 N. E. Rep. 239]; *Methodist E. Church* v. *Water Co.* 10 Circ. Dec. 648 (20 R. 578); *Foster* v. *Robinson*, 6 Ohio St. 90; *Frasier* v. *Monroe*, 72 Pa. St. 166; *Lance* v. *Coal Co.* 163˙ Pa. St. 84 [29 Atl. Rep. 755]; *Wyatt* v. *Irrigation Co.* 18 Colo. 298 [33 Pac. Rep. 144; 36 Am. St. Rep. 280]; *Pratt* v. *Prouty*, 104 Iowa 419 [73 N. W. Rep. 1035; 65 Am. St. Rep. 472]; *Robbins* v. *Kimball*, 55 Ark. 414 [18 S. W. Rep. 457; 29 Am. St. Rep. 45]; *Cravens* v. *Mills Co.* 120 Ind. 6 [21 N. E. Rep. 981; 16 Am. St. Rep. 298]; *Wiley's Estate*, 187 Pa. St. 82 [40 Atl. Rep. 980; 67 Am. St. Rep. 569]; *Kendall* v. *Klapperthal Co.* 202 Pa. St. 609 [52 Atl. Rep. 92]; *Connery* v. *Brooks*, 73 Pa. St. 80; *Creveling* v. *Wood*, 95 Pa. St. 152; *Ringrose* v. *Ringrose*, 170 Pa. St. 593 [33 Atl. Rep. 129]; *Wright* v. *Gas Co.* 2 Pa. Superior Ct. 219; *Coleman* v. *Chadwick*, 80 Pa. St. 81 [21 Am. Rep. 93]; *Gillespie* v. *Iseman*, 210 Pa. St. 1 [59 Atl. Rep. 266]; *Jackson* v. *Ely*, 57 Ohio St. 450 [49 N. E. Rep. 792]; *Beardsley* v. *Foot*, 14 Ohio St. 414 [84 Am. Dec. 405]; *Ensel* v. *Levy*, 46 Ohio St. 255, 260 [19 N. E. Rep. 597]; *McBride, In re*, 132 Fed. Rep. 285; *Nassoiy* v. *Tomlinson*, 148 N. Y. 326 [42 N. E. Rep. 715; 51 Am. St. Rep. 695].

**A. S. Cole,** and **Hine, Kennedy & Robinson,** for defendant in error:

Cited and commented upon the following authorities: *Mercer Mining & Mfg. Co.* v. *McKee*, 77 Pa. St. 170; *Dunham* v. *Haggerty*, 110 Pa. St. 560 [1 Atl. Rep. 667]; *Lance* v. *Coal Co.* 163 Pa. St. 84 [29 Atl. Rep. 755]; *Wright* v. *Coal Co.* 182 Pa. St. 514 [38 Atl. Rep. 491]; *Johnson* v. *Filer*, 201 Pa. St. 60 [50 Atl. Rep. 940]; *Hoyt* v. *Coal Co.* 212 Pa. St. 205 [61 Atl. Rep. 885]; *Genet* v. *Canal Co.* 163 N. Y. 173 [57 N. E. Rep. 297]; *Genet* v. *Canal Co.* 58 Hun 492 [12 N. Y. Supp. 572]; *Genet* v. *Canal Co.* 59 Hun 623 [14 N. Y. Supp. 939]; 20 Am. & Eng. Enc. Law (2 ed.) 582; *Carr* v. *Fuel Co.* 88 Iowa 136 [55 N. W. Rep. 255]; *Cullen* v. *Bimm*, 37 Ohio St. 236; *Riggs* v. *Armstrong* 23 W. Va. 760; 11 Wharton, Evidence (3 ed.) Sec. 966; *MacCulsky* v. *Klosterman*, 20 Ore. 108 [25 Pac. Rep. 366; 10 L. R. A. 785]; *Ferguson* v. *Rafferty*, 128 Pa. St. 337 [18 Atl. Rep. 484; 6 L. R. A. 33]; *Buckingham* v. *Hanna*, 2 Ohio St. 551; *McKinzie* v. *Steele*, 18 Ohio St. 38; *Pennsylvania Co.* v. *Platt*, 47 Ohio St. 366 [25 N. E. Rep. 1028]; 16 Cyc. 722; *Tobias* v. *Richardson*, 26 O. C. C. 81; *Greene Tp. (Tr.)* v. *Campbell*, 16 Ohio St. 11; *Winters* v. *De Turk*, 133 Pa. St. 359 [19 Atl. Rep. 354; 7 L. R. A. 658]; 15 Enc. of Pl. & Pr. 731; Pomeroy, Rem. & Rem. Rights Sec. 85.

Coal Co. v. Hughes.

**COOK, J.**

This action was to recover for the royalty upon a large number of tons of coal mined and shipped by the Hutson Coal Company. The action was by Ann Hughes, Fanny Johns and Askenas L. Davies, heirs at law of John A. Davies, deceased.

John A. Davies, the ancestor, by written contract, bargained and sold all the mineral and stone coal underlying 260 acres of land situated in this county, to a number of parties who afterward transferred their interest in the contract and coal to the Hutson Coal Company.

The contract provides:

"That in consideration of one dollar received, and of the covenants and agreements of the second party, to be performed as hereinafter stipulated, the said party of the first part does hereby bargain, sell and convey unto the said second party all the mineral and stone coal that may underlie the following described tract or lot of land situate in the township of Palmyra, county of Portage and state of Ohio, and is bounded and described as follows:"—that is, the 260 acres less two acres.

The agreement further provides that, "It is agreed by the party of the second part that they will within six months from the date of this contract, test said land by drilling or otherwise; and in case there should be discovered a minable vein or basin of stone coal of sufficient quantity and quality to justify the opening and mining of said coal in the opinion of said second party, then they agree to mine out said coal and pay the following rate per ton for all coal mined on said premises, to wit: When in thickness two feet and under, ten cents, over two and under three feet, fifteen cents, and three feet and over, twenty-five cents for each ton of 2,240 pounds of merchantable coal. Payments to be made in the following manner:" (Here setting forth the manner of payment.)

The agreement further provides,

"Said party of the second part shall have the right to abandon this contract at any time they shall determine that said coal in quantity, quality, or condition is no longer minable with economy and profit and they may remove the machinery and other structures and property from said land."

The first question made is: Are the plaintiffs, as heirs at law of John A. Davies, the proper parties to bring the suit? The defendant by its answer objects to the plaintiffs' prosecuting the suit and insists that the suit should be brought by the personal representative. The solution of this question depends upon whether this contract made was a lease of the coal or an absolute sale of the same. On behalf of plain-

tiff in error, it is claimed that it was an absolute sale of the coal notwithstanding the provision that the parties of the second part might abandon the premises and remove their appliances upon the contingency set forth; and that the provision for the payment of royalty at fixed times was mere payment of the purchase money for the coal and not as rent.

The case of *Edwards* v. *McClurg*, 39 Ohio St. 41, is almost identical with the case under consideration—the contract in that case providing:

" 'The first party has agreed to sell and does hereby give, grant, bargain, sell and convey' unto said second party, their heirs and assigns, 'all the stone coal lying and being in, under and upon certain premises' in consideration of thirty cents per ton on all coal when mined." That contract also containing the following clause: "The second party 'shall have the right to abandon the contract at any time when they shall determine, in their judgment, that said coal, in quantity, quality and condition, is no longer minable with economy and profit.' " Under that contract it was held:

"1. All minable coal in place passed absolutely to the grantees.

"2. After such conveyance no interest in the minable coal remained in the grantor subject to be mortgaged as land.

"3. A mortgage upon the remaining interest of the grantor in the land, did not cover the purchase money due or to become due from the purchasers of the coal."

Upon page 49 it is said in the opinion:

"This is not a case for the application of the doctrine, that a mortgagee, after condition broken, may demand the rents from a lessee of the mortgaged premises. The Vienna Coal and Iron Company is not lessee of any part of the premises mortgaged by James L. to Darius M. McClurg. The moneys due and to become due from the company under the deed, September 28, 1867, are not rents, but purchase money."

This would seem to be conclusive that the claim for royalty was a part of the personal estate of the decedent, which upon his death vested in his personal representative.

It may be conceded that the estate of John A. Davies had been fully settled up as he died in 1888, yet that would not affect the question as to who should be parties plaintiff.

In the case of *Davis* v. *Corwine*, 25 Ohio St. 668, it is held that,

"The heirs of an intestate cannot, even after settlement by the administrator, and where there are no outstanding debts, maintain an action in their own names to recover possession of assets belonging to the estate, or to compel the executors of a party who had a life interest in such assets, and has wrongfully disposed of them by will, to account

Coal Co. v. Hughes.

for the same.'' And in the opinion it is stated specifically, that, ''all personal actions must be brought by the administrator and cannot be brought by the heirs.''

In the case of *McBride* v. *Vance*, 73 Ohio St. 258, it was held:

''The personal property of a deceased person does not vest in his heirs but is in abeyance until administration is granted and is then vested in the administrator by relation from the time of death, and no right of action on a promissory note belonging to a deceased person is shown by a party in an action on the note by proof of possession and that he is the sole heir of the decedent.''

We, therefore, hold that the suit was improperly brought in the name of the heirs.

The second question made goes to the exclusion of certain evidence offered by defendant below. The defendant in mining and shipping of coal had three grades: lump coal, nut coal and slack.

The contract, as we have seen, provided that the party of the second part should pay as royalty so much for all merchantable coal mined. Monthly statements were required to be made and the royalty paid. The company made regular statements of the lump coal mined and shipped and royalty was paid upon the same which was accepted by the representatives of Davies and receipts given for the same for a long number of years. No statement was made of the nut and slack sold and shipped by the company and no complaint was made of such omission during all those years by the representative of Davies and no demand made for payment of royalty upon the nut and slack.

This suit is to recover the royalty upon this nut and slack coal sold and shipped by the coal company, the mine being now abandoned, and for the same royalty as upon the lump coal:

The line of evidence offered by the defendant and excluded by the court was that at the time this contract was made, to wit, in 1884, the words ''merchantable coal'' had a trade significance in the locality where this land was situated and the contract made; that it meant lump coal. This evidence under objection was rejected by the court upon the theory as we are informed by counsel that the word ''merchantable'' is in no way ambiguous and could not be explained by parol evidence.

Should this evidence have been admitted? True, the word, merchantable, has a general signification but may it not also have a trade signification. Webster's definition is, ''Fit for market; such as is usually sold in the market, or such as will bring the ordinary price;'' but he adds to his definition ''sometimes a technical designation for a particular kind or class.'' Had it a technical meaning in this contract? For nearly fifteen years, close up to the time they would have been barred

by the statute of limitations from the recovery of the greater amount of their claim, they remained silent. Month by month they accepted the statements as if the word "lump" was the equivalent of "merchantable." The important matter is, How did these parties understand this word as applicable to this contract and how did they use it? If, in the locality where this land was situate at the time the contract was made, it had a technical or trade signification, and nut and slack had no market value, and only lump coal was sold and shipped, could it be said that the parties used the term in its general sense, especially when the parties themselves seem to have understood it in a different sense? Furthermore from what we know of royalty upon coal the price in this case was an exceedingly high one. Is it to be supposed that these parties intended to pay from ten to twenty-five cents a ton royalty upon nut and slack?

Be that as it may, why should not the defendant have been permitted to show the circumstances surrounding the parties at the time the contract was made, and the custom of trade and the kind of coal that was in fact sold in the market.

In the case of *Cullen* v. *Bimm*, 37 Ohio St. 236, evidence was admitted to show what was meant by the term "merchantable ice."

In the case of *Barrett* v. *Allen*, 10 Ohio 426, it was held "Where a note was made payable in woolen cloth at a fair wholesale factory price," parol evidence is admissible to show that a certain scale of prices was intended different from the actual wholesale prices in the market.

In *Ferguson* v. *Rafferty*, 6 L. R. A. 33, 43n [128 Pa. St. 337; 18 Atl. Rep. 484], in the note it is said,

"A special sense, which vernacular words have acquired in a particular trade, may be shown, coupled with proof that the parties were contracting with reference to that trade."

That was what the defendant below proposed to prove in this case. That the words "merchantable coal" were vernacular words in the trade, meaning the same as "lump coal." That in fact there was no traffic whatever in nut and slack coal and therefore the parties were contracting with reference to "lump coal," in the payment of royalty.

The evidence should have been admitted and it was error to exclude it.

Judgment of court of common pleas will be reversed and the cause remanded for such proceedings as may be required by law.

**Burrows** and **Laubie, JJ.,** concur.