174 So.2d 590 (1965)
R.H. WISE et al., Appellants,
v.
Ignatius C. QUINA and Bertha N. Quina, and Jack M. Merritt, and Dorothea L. Merritt, Appellees.
R.J. BROWN, Appellant,
v.
Ignatius C. QUINA, and Bertha N. Quina, husband and wife, Appellees.
Nos. E-306, F-95.
District Court of Appeal of Florida. First District.
April 20, 1965.
Rehearing Denied May 20, 1965.
*591 Coe & Coe, Pensacola, for appellants.
Robinson & Roark, Beggs, Lane, Daniel, Gaines & Davis, and James E. Hertz, of Fisher & Hepner, Pensacola, for appellees.
CARROLL, DONALD K., Judge.
In two companion cases involving recreational rights appurtenant to a real estate subdivision, the plaintiffs have appealed from a final decree and a summary final judgment entered by the Circuit Court for Escambia County.
The first of these companion cases is a suit in equity which was filed by R.H. Wise, R.J. Brown, and 13 other purchasers of lots in the said subdivision, seeking a declaration that they are entitled to the said recreational rights, and seeking injunctive and other equitable relief. The *592 second case is an action at law, originally filed by 13 of the said 15 plaintiffs (but later all but one of them, R.J. Brown, withdrew as parties plaintiff), demanding damages for their loss of such rights.
These two cases arose out of the same factual background. They have been consolidated for purposes of oral argument on this appeal and will be treated together in this opinion. This common factual background, as reflected in the record and in the chancellor's findings of fact in his final decree in the equity case, is essentially as follows:
In 1949 Ignatius C. Quina and his wife, Bertha N. Quina, who were defendants in both cases and who will hereinafter be referred to as the Quinas, filed in the public records of Escambia County a plat of a subdivision known as "Quinavista," which plat was approved by the Board of Commissioners of the said county. One of the lots delineated on the plat was an area described therein as "Beach Block 7," which area lies between the residential lots and a navigable body of water known as Big Lagoon, being immediately contiguous to the said body of water.
After filing their plat the Quinas sold to various persons the residential lots also delineated on the plat. Among such purchasers were the persons who later filed the two actions involved in this appeal. In making these sales Ignatius Quina represented to the said purchasers that Beach Block 7 was to be devoted in perpetuity to the use of the purchasers and owners of the residential lots in the subdivision as a beach area, a recreation ground, and as an access to the waters of Big Lagoon. In the words of the chancellor in his final decree, the "said representations were a substantial factor in inducing plaintiffs and other prospective purchasers to buy lots in said subdivision. * * *"
Despite the said representations, the Quinas on August 3, 1962, conveyed approximately half of Beach Block 7 to Jack M. Merritt and his wife, Dorothea L. Merritt, who were defendants in the equity suit but not in the law action and who will hereinafter be referred to as the Merritts. The Merritts proposed to construct upon the land so purchased a large marina and other large commercial and industrial facilities.
By virtue of the foregoing facts as found by the chancellor from the evidence before him, he held in his final decree that the plaintiffs had "acquired by implied covenant a private easement in said Beach Block 7 as appurtenant to the premises granted and conveyed to them in their several conveyances," and that the Quinas thus became bound to the grantees not to use the said Beach Block 7 other than for the purposes stated in the said representations and "are now estopped to deny said easement * * *."
With respect to the land purchased by the Merritts, however, the chancellor concluded in the final decree that the evidence established that at the time of the said purchase the Merritts "were innocent purchasers for value and that their conveyance is unencumbered by said easement heretofore declared to exist in the plaintiffs herein." The chancellor then concluded that the plaintiffs' prayers for injunctive relief against the Merrits and for the avoidance of the conveyance to the Merritts should be denied and that the suit be dismissed as to the Merritts.
These conclusions of the chancellor concerning the Merritts give rise to the first question raised by the appellants in their appeal from the said final decree. In their brief they express this first question as follows:
"Where a vendor in breach of faith to those to whom he has made binding representations as to the use of a tract, so as to be estopped to divert it from their use, conveys to a third person who is not clearly chargeable with knowledge of the fraud, but who learns thereof when only some $8,000.00, of the purchase price of $34,000.00 has *593 been paid, and while securities given for the remainder are still held by the vendor who is before the court, is he entitled to protection as a bona fide purchaser for value without notice as to the whole of the tract, or only to the extent of his payment?"
With respect to this first question on appeal in the equity case, the plaintiffs-appellants point out that the record shows that the Merritts, shortly before the equity suit was filed and prior to the establishment by any recordable writing evidencing the plaintiffs' rights created by the Quinas' "quasi-dedication, purchased the major portion of Beach Block 7 from the Quinas, but had paid to the Quinas only some $8,000 of the $34,000 purchase price; that the balance of the purchase price was covered by their mortgage and mortgage note payable to the Quinas, in monthly installments; and that, therefore, the Merritts could not be good faith purchasers because, when they received notice of the plaintiffs' claim, they still owed the major portion of the said purchase price. The appellants appropriately concede that, although the evidence was conflicting, there was sufficient evidence from which the chancellor, as the trier of the facts, could lawfully conclude that the Merritts had no notice of the plaintiffs' claim at the time the Merritts purchased the property.
Nevertheless, the appellants contend that the Merritts were not bona fide purchasers for value without notice because of the general rule that, in order to enjoy the rights of bona fide purchasers, the purchase price must be paid before the notice is received. In support of this proposition the appellants cite and rely upon the statements of this rule in 55 Am.Jur., Vendor and Purchaser, Sec. 747, and 92 C.J.S. Vendor and Purchaser § 323d(2), and they also quote from two decisions of the Supreme Court of Florida  Johns v. Seeley, 94 Fla. 851, 114 So. 452 (1927), and Myers v. Van Buskirk, 96 Fla. 704, 119 So. 123 (1928). They quote the following language from the opinion in the latter case, which seems to be the latest expression of a Florida appellate court concerning the rule in question:
"If, however, a purchaser has notice, actual or constructive, of prior adverse rights in the land, before he has paid the purchase price or has become irrevocably bound for its payment, he is not protected as a bona fide purchaser, even though he may have received a deed purporting to convey to him the whole title, both legal and equitable."
Under this statement of the rule, argue the appellants, the Merritts had paid the Quinas only $8,000 of the $34,000 purchase price at the time they received notice of the plaintiffs' adverse claim to the easement on Beach Block 7 and hence the Merritts could not be bona fide purchasers for value without notice.
In applying the rule as set forth in the above quotation from the Supreme Court's opinion in the Myers case, our problem is to determine whether the Merritts, at the time they received notice of the plaintiffs' claim, had "become irrevocably bound" for the payment of the purchase price. Before such time they had paid $8,000 to the Quinas and had executed in favor of the Quinas the promissory note in the principal amount of the balance of $27,200 (including interest) still owing on the purchase price. The payment of their note was secured by the purchase-money mortgage. At the time they received notice of the plaintiffs' claim, were the Merritts "irrevocably bound" by these instruments to pay the balance of the purchase price?
We think that the Merritts at such time were "irrevocably bound" to pay the said balance, within what we conceive to be the meaning of these quoted words as used by the Supreme Court in the above quotation from the Myers case. We consider that the Merritts were so bound, even though they could, of course, elect to default *594 on the note and mortgage, in which event the holder of these instruments would have the right to file against them a law action on the note or an equity suit to foreclose the mortgage. Nevertheless, they had no legal right to revoke their promise to pay and they were contractually bound by legally-enforceable instruments to make the payments (or suffer the legal consequences of default). Accordingly, we think that the chancellor in the equity case correctly ruled that the Merritts were bona fide purchasers for value and hence the land which they bought from the Quinas should not be subjected to the easement claimed by the plaintiffs. His ruling, in our opinion, comports with logic, the law, and the justice of the cause.
The second point on appeal in the equity case is so closely intertwined with the sole point on appeal in the companion action at law that a clearer understanding of the merits of both points can be reached by first discussing the point on appeal in the law action as set forth in the brief of the appellant, Brown, as follows: "When suit in equity is brought to enjoin the threatened hostile appropriation of an easement; and it develops on the trial that the rights of third persons as bona fide purchasers without notice of the easement have been created by grant from the original owner made at great profit to himself, and loss to the owner of the easement in disregard of grantor's prior acts creating the easement and while injunctive relief is granted as to the parts of the land wherein such purchaser is not interested, but is necessarily denied as to the lands held by the purchaser, is such adjudication a bar to a subsequent action at law against the mala fide grantor for damages for the loss."
As mentioned above, the action at law was originally filed against the Quinas by 13 of the 15 plaintiffs in the equity suit, but, as recited by the court in its summary final judgment, the plaintiffs amended their complaint in the law action to dismiss as to all parties plaintiff except R.J. Brown, who thus became the sole plaintiff and subsequently the sole appellant in the appeal in the law case. Brown's prayer in his complaint is for the recovery against the Quinas of "appropriate damages" for the loss of his easement in Beach Block 7 and for the "diminution of the value and commodiousness" of his home and property in the said subdivision.
The Circuit Court entered in the law action its summary final judgment in favor of the Quinas for the reason stated therein that: "* * * the said plaintiff is now estopped by judgment from the bringing of this action because he has had his day in Court in that certain suit in equity referred to in the complaint herein between the plaintiff and these defendants, and holding that said plaintiff should not be permitted to split a single cause of action; and the Court being of the further opinion that the relief sought in this suit could have been secured by the plaintiff herein in the aforesaid suit in equity as alternative relief therein upon a prayer for the assessment of damages against these defendants because of the Court's inability to grant as against them, full equitable relief due to the intervention of the rights of innocent third parties. * *"
Attached to and made a part of the amended complaint in the law action are copies of the pleadings and final decree in the equity suit. An examination of the equity complaint shows that the plaintiffs (including, of course, R.J. Brown) do not therein pray for the assessment of damages but specifically pray only for equitable relief  that is, for a declaration of their rights in Beach Block 7, for the avoidance of the deed to the Merritts, and for an injunction against the Quinas and the Merritts to restrain them from interfering with the plaintiffs' said rights. The said complaint contains no prayer for damages or for any other relief in law. The nature of the relief prayed for in the equity suit is, of course, an important consideration in determining whether the final decree is res adjudicata as to the action at law. *595 Furthermore, the said final decree fails to provide for, or even to refer to, the assessment of damages against any of the defendants. In view of these considerations, we think that the Circuit Court erred in holding in its summary final judgment that the plaintiff, Brown, "is now estopped by judgment from the bringing of this action because he has had his day in Court in that certain suit in equity. * * *"
So far as the record before us shows, the closest the plaintiffs came to claiming damage against the Quinas in the suit in equity was in a paragraph in their memorandum filed with the chancellor at the final hearing. In that paragraph they suggested that, if the chancellor should find that the Merritts were bona fide purchasers for value without notice pro tanto to the extent of their cash down payment, he should grant to the plaintiffs one of three alternative forms of relief. One of these suggested alternative forms of relief was that the balance due from the Merritts to the Quinas on the notes and mortgage be subjected to the claims of the plaintiffs "for the very substantial deprivation of their rights. * * *" In a motion filed nearly six months after the entry of the final decree, the plaintiffs asked the court to permit the addition of the said paragraph to the records on appeal, since they had not included it in their directions to the clerk, but the chancellor denied the motion on the ground that he "consciously and purposely" denied in his final decree the alternative relief described in the paragraph and that that decree is "conclusive of said denial * * *"; but the chancellor further provided that his said order should become a part of the record on appeal.
In our opinion, the alternative forms of relief suggested in the plaintiffs' said memorandum cannot, in any sense, be considered equivalent to a demand for damages against the Quinas. Subjecting future payments on notes and a mortgage to the plaintiffs' claim is a far cry from the awarding of damages directly against the Quinas. Besides, the three suggested alternative forms of relief were specifically made subject to the possible holding by the chancellor that the Merritts were only pro tanto purchasers for value without notice, but the chancellor in effect held that the Merritts were such purchasers to the full amount of the purchase price (which holding we have sustained above). In any event, it is too basic to require citation of authorities, that, under our court system and procedural rules, the issues for adjudication in a cause are those drawn by the parties in their pleadings, not by statements, suggestions, or arguments made by the parties in their briefs or memoranda. While we have no doubt that the able chancellor, while pondering over his findings and conclusions to be included in his final decree, considered everything presented to him in the cause, including arguments made by the parties orally and in their memoranda, his decree contains no adjudication on the question of the award of damages to the plaintiffs against the Quinas, and not even a reference to such a question. This is not surprising, for such an issue was not before him for adjudication, for the plaintiffs had not demanded damages in their complaint or in any other pleading.
Under such circumstances, we do not see how, under fundamental principles, such a decree can legally become a bar to the plaintiffs' later filing an action at law for damages against the Quinas, under either the doctrine of res judicata or the doctrine of estoppel by judgment.
As defined in many decisions of the appellate courts of this state and other jurisdictions, the doctrine of res judicata means that the judgment of a court of competent jurisdiction directly rendered upon a particular issue is conclusive as to the parties and the issue so decided, in the same or any other controversy. See, for instance, our Supreme Court's decisions in United States Gypsum Co. v. Columbia Cas. Co., 124 Fla. 633, 169 So. 532 (1936) and *596 Finston v. Finston, 160 Fla. 935, 37 So.2d 423 (1948). That doctrine is to be differentiated from the doctrine of estoppel by judgment, under which, where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue upon the determination of which the finding or verdict was rendered. See Gray v. Gray, 91 Fla. 103, 107 So. 261 (1926), and Gordon v. Gordon, 59 So.2d 40 (Fla. 1952).
By very definition, then, under neither the doctrine of res judicata nor the doctrine of estoppel by judgment, were any of the plaintiffs in the equity suit barred from maintaining an action at law for damages against the Quinas, for the issue of their right to such damages was neither raised nor adjudicated in the equity suit. Consequently, we hold that the court erred in granting the summary judgment appealed from herein.
The final question involved in the present appeal which merits our discussion in this opinion is raised in one of the cross-assignments filed by the Quinas in the equity case  the question of the admissibility, under the parol evidence rule, of the testimony concerning Quina's representations to the plaintiffs and other purchasers of the subdivision lots that Beach Block 7 would be perpetually reserved for their use as a recreation area. The chancellor held in his final decree that the parol evidence rule does not operate to defeat the rights of the plaintiffs in Beach Block 7 "for the reason that said rights have been acquired by implied covenant as appurtenant to the specific properties described in the several conveyances to the several plaintiffs herein, and are not in variance of the particular titles acquired thereby. * * *"
In many decisions this court and the other appellate courts of Florida have recognized the parol evidence rule as a rule declaring that parol evidence is not admissible to vary the terms of a valid written instrument. It is not a rule of evidence but a rule of substantive law. The rule rests upon the rational foundation of experience and policy and is essential to the certainty and stability of written obligations. See our opinion in Paradise Beach Homes, Inc. v. South Atlantic Lumber Co., 118 So.2d 825 (Fla.App. 1960), and the cases cited therein. Our courts have, however, recognized numerous exceptions to (or, more accurately, clarifications of) the parol evidence rule.
One of these exceptions or clarifications of the said rule was recognized by the Supreme Court of Florida in Mallard v. Ewing, 121 Fla. 654, 164 So. 674 (1936). In that case the mortgagee filed a suit to foreclose a purchase-money mortgage on certain land. In her answer the mortgagor set up a counterclaim averring that at the time she purchased the land the mortgagee agreed to transfer and deliver to her certain furniture, furnishings, and fixtures located in an apartment building on the lot, and also agreed to pay rent for occupying a certain apartment, but had failed to fulfill these agreements. After approving the rule allowing parol evidence of the true consideration of a written instrument, the Supreme Court held:
"It is also a generally recognized rule that parol evidence is admissible to establish a contemporaneous oral agreement which induced the execution of a written contract, though it may vary, change, or reform the instrument. It is true that such rule requires the agreement to be shown by evidence that is clear, precise, and indubitable; that is it shall be found that the witnesses are credible, that they distinctly remember the facts to which they testify, and that they narrate the details exactly and that their statements are true. See Walker v. France, 112 Pa. 203, 5 A. 208; Thomas & Sons v. Loose, 114 Pa. 35, 6 A. 326; *597 Ferguson v. Rafferty, 128 Pa. 337, 18 A. 484, 6 L.R.A. 33."
Applying this rule, the Supreme Court held that parol evidence was admissible to show "the contemporaneous agreement of the parties which induced the defendant to purchase."
In the equity case before us the chancellor specifically found in his final decree that Quina's said representations "were a substantial factor in inducing plaintiffs and other prospective purchasers to buy lots in said subdivision. * * *" This finding, we think, is amply supported by the evidence in the record before us.
Applying the rule set forth in the above question from the Mallard decision, we are of the view that the chancellor properly admitted the oral testimony concerning Quina's said representations because they clearly constituted an inducement to the plaintiffs in the purchase of their subdivision lots.
Another exception to or clarification of the parol evidence rule that seems pertinent to the present inquiry was recognized by the Supreme Court of Florida in Moses v. Woodward, 109 Fla. 348, 140 So. 651, 141 So. 117, 147 So. 690 (1933), holding as follows:
"The rule is well settled that an executory or parol agreement will not be permitted to abrogate or modify a written or sealed instrument, but this rule is not without its exceptions. A written contract or agreement may be altered or modified by an oral agreement if the latter has been accepted and acted upon by the parties in such manner as would work a fraud on either party to refuse to enforce it. 6 R.C.L. 917; Bishop v. Busse, 69 Ill. 403; Pratt v. Morrow, 45 Mo. 404, 100 Am.Dec. 381; American Food Company v. Halstead, 165 Ind. 633, 76 N.E. 251; Munroe v. Perkins, 9 Pick. (Mass.) 298, 20 Am.Dec. 475; Beach v. Covillard, 4 Cal. [315,] 316; Siebert v. Leonard, 17 Minn. 433 (Gil. 410); Bassini v. Brockner, 10 N.J.L.J. 105." (147 So. at page 691.)
We think that the oral representations or agreement of Quina in the instant appeal fall squarely within this statement of the rule in the Moses case, for the plaintiffs in good faith accepted and acted upon those representations in such a manner, we feel, that a fraud would be worked on them if his oral agreement should not be recognized and enforced.
A more serious question is adverted to by the parties in their briefs in the appeal of the equity case, the question of the application of the Statute of Frauds to the said oral representations made by Quina. An examination of the record in that case, however, establishes that none of the defendants invoked the Statute of Frauds as an affirmative defense in any defensive pleading (as required in Rule 1.8(d) of the Florida Rules of Civil Procedure, 30 F.S.A.), nor did any defendant invoke the said statute in any objection to the admission of the evidence concerning Quina's representations; nor is the said statute referred to in any of the cross-assignments of error in this appeal. As the District Court of Appeal, Third District of Florida, held in Heffernan v. Keith, 127 So.2d 903 (1961), "* * * the defense of the statute of frauds is to be affirmatively pleaded and established." Under these circumstances we consider that the appellees have waived the question of the application of the Statute of Frauds in this appeal. This question, therefore, is not before us for determination in this appeal, and nothing that we have said in this opinion should be construed as ruling upon that question one way or the other.
In response to the Quinas' argument as to the admissibility of the testimony concerning the said oral representations, the appellants in the equity case rely principally upon the decisions of the Supreme Court of Florida in Boothby v. Gulf Properties *598 of Alabama, Inc., 40 So.2d 117 (1949) and McCorquodale v. Keyton, 63 So.2d 906 (1953). While in those decisions the Supreme Court did not specifically discuss the application of the parol evidence rule or the Statute of Frauds to the evidence of oral representations, the factual situations in those cases are so strikingly similar to that involved in the present appeal that we think a discussion of those decisions is in order here.
In the first of these two Supreme Court cases the recorded plat of a subdivision known as Laguna Beach, located near Panama City, indicated that a highway divided the subdivision lots from a 4,000 foot long area marked "Beach Reserved." The evidence indicated that the "Beach Reserved" area had been represented by the promoters to the purchasers of lots in the subdivision as an area reserved as a beach for the benefit of the property owners of Laguna Beach.
At the hearing in the said Boothby case numerous witnesses testified that one Lahan, the president of the selling corporation, had told them and other purchasers of lots that, in the words of one witness, the said area "was reserved as a beach for the benefit of the property owners of Laguna Beach, that no dwellings or houses would be built on that part of the beach." The same witness further testified that he bought his lot for the view of the Gulf "as much as anything else." Upon this and other evidence in the record the Supreme Court reached the following conclusions:
"There is some denial of such representations; however, when it is considered that the proximity of the lots to the beach of the Gulf was the principal quality of the lots sold; that the plat bore the words `Beach Reserved' for the area in dispute; and that, if the purchasers of the lots were not to have a right of ready access to the Gulf over the area in dispute, they could have been effectively cut off and deprived of the ready access to the beach by this 4000 foot strip of land, it seems clearly established that the promoters of the subdivision should now be enjoined from claiming for private use the area marked `Beach Reserved.' The defendant should be estopped to now claim that which he represented before the sales to be for the benefit of the purchasers."
In this Boothby case, however, the chancellor had entered a final decree dismissing the complaint filed by the purchasers of lots against the corporation promoting the subdivision. The Supreme Court reversed the final decree with directions to enter a final decree "granting the plaintiffs appropriate relief."
In the second Supreme Court case relied upon by the appellants in the equity case before us, McCorquodale v. Keyton, 63 So.2d 906 (1953), the Supreme Court of Florida reached a similar conclusion upon comparable facts. In 1935 the defendants M.E. McCorquodale and his wife, owners of a tract of land fronting on the Gulf of Mexico, platted and subdivided the tract and sold lots in the subdivision to various purchasers according to their plat, which they filed in the public records of Bay County with the approval of the Board of County Commissioners. Their plat showed that U.S. Highway 98 (also known as the Gulf Coast Highway) ran between the residential lots and the Gulf of Mexico. The plat contained a dedication by the McCorquodales of the land lying between the said highway and the Gulf "as `Sunnyside Park' for use of property owners of said plat." Some time after filing the plat, the McCorquodales constructed a small building on the land between the highway and the Gulf, where principally sandwiches and cold drinks were sold. They operated the business for a number of years without objection from the lot owners in the subdivision and then sold the building to J.M. Webb, who was operating the business when the suit was filed in 1951 by two of the owners of the lots in the subdivision, *599 whose complaint charged that the use of the building by Webb for his private business purposes deprived the lot owners of the common use and enjoyment of the tract dedicated as Sunnyside Park and boldly marked on the plat as such. The plaintiffs prayed for an injunction restraining the McCorquodales from conveying to Webb or any other person any part of Sunnyside Park. Testimony was taken and the chancellor entered a final decree granting to the plaintiffs the relief they had prayed for, holding that the said dedication created and granted to the subsequent property owners of the plat, including the plaintiffs, "an easement and right, appurtenant to the property of the plat, to use said park area in common with all other such property owners as a private park, for the use and benefit of all of the property owners, owning and possessing land within said subdivision."
In considering the final decree in the McCorquodale case, the Supreme Court said:
"The contention of the appellants that the declaration is a nullity because it attempted to create private rights in a limited group by dedication has no application here. Considered, however, with the plat itself, upon which the land in question was clearly marked `Sunnyside Park', the evidence of the plaintiffs that they and others bought their lots relying upon said land being a park and the lot owners having the unrestricted use thereof, together with the fact  of which this Court takes judicial knowledge  that access to and use of the beach is an extremely valuable right to the owners of land such as is involved here, the effect  by whatever name it may be called  was to forever bar the developer from denying the owners that which he led them to believe they had."
Before affirming the final decree, the Supreme Court in its discussion of the applicable law, stated that the reasoning in the Boothby case, supra, and two other Florida cases "clearly supports" the final decree. The court then recognized the following principle:
"Whenever the owner of a tract of land subdivides the same into lots and blocks, lays off streets and other public ways and designates portions of said lands to be parks playgrounds or similar facilities or uses similar words calculated to encourage prospective purchasers to buy said lots, and actually sells lots with reference to the plat, he becomes bound to his grantees by the plat and the representations thereon. As the maker of the plat and the one who selects the words used thereon it will be construed against him. Common honesty requires that he perform that which at the time of conveyance he represented he would perform."
Our Supreme Court then quoted, with express approval, the following language from the case of Lennig v. Ocean City Association, 41 N.J. Eq. 606, 7 A. 491, 493, 56 Am.Rep. 16, in speaking of the said principle:
"`From this doctrine, it, of course follows that such distinct and independent private rights in other lands of the grantor than those granted may be acquired, by implied covenant, as appurtenant to the premises granted, although they are not of such a nature as to give rise to public rights by dedication. The object of the principle is, not to create public rights, but to secure to persons purchasing lots under such circumstances those benefits, the promise of which, it is reasonable to infer, has induced them to buy portions of a tract laid out on the plan indicated.'"
While it must be conceded that the delineating words on the plat in the case at bar  "Beach Block 7"  are not as clear and legally effective as the words in the plat in Boothby ("Reserved Beach") and *600 the words of the dedication on the plat in McCorquodale, the general principles recognized in the said cases may find application to the factual situation shown in the record before us.
For the foregoing reasons the final decree in the equity case is affirmed; and the summary final judgment in the action at law is reversed and that cause is remanded with directions for further proceedings consistent with the views herein expressed.
It is so ordered.
WIGGINGTON, Acting C.J., and RAWLS, J., concur.