418 So.2d 345 (1982)
E.L. DUNN and John C. Nix, Jr., Appellants,
v.
J.E. STACK, Jr., John Barnes, Zeda Barnes Davis, Mathew Barnes, Noah Barnes, Ola Mae Barnes Rawls, Allen W. Lindsay, Sr., Thomas "Dick" Ates, Whitney National Bank and A.B. Walker, Appellees.
No. AF-217.
District Court of Appeal of Florida, First District.
August 5, 1982.
Rehearing Denied September 8, 1982.
*346 Ronald W. Ritchie, of Reeves, King & Ritchie, Pensacola, for appellants.
Donald H. Partington, of Clark, Partington, Hart, Hart & Johnson, Pensacola, for J.E. Stack, Jr. and Whitney National Bank, appellees.
ERVIN, Judge.
Oil in Florida's Panhandle is one of our state's treasures, but the rush to exploit this hidden bounty has created some unfortunate legal disputes, such as the case at bar. This quiet title action, which ended in a summary judgment for the appellees, has *347 created a complex mosaic web from which it is difficult for one to discern whether the appellants are in fact bona fide purchasers for value. Because latent factual issues remain, we reverse the summary judgment and remand for further proceedings; at the same time acknowledging that this case has been before us on one previous occasion[1] and surmising that we will in all probability see its visage again.
In 1961 J.E. Barnes passed away leaving an undivided one-half interest in a fourteen-acre tract of land to his wife, who later died in 1967, conveying her interest in undivided one-fifth shares to each of the couple's five children, including Matthew Barnes and Zeda Barnes Davis. In 1968 Matthew Barnes became administrator of the estate.
Part of the fourteen-acre tract was the subject of some collateral quiet title problems. During the pendency of these problems, Matthew Barnes petitioned the probate court for permission to lease the mineral rights to the tract. The court approved, and Barnes was later able to negotiate a lease with Thomas "Dick" Ates, one of the appellees herein. On November 16, 1971, the probate judge approved the lease agreement subject to a final determination on the collateral quiet title action in favor of the Barnes estate. This order was promptly filed in the probate file.
Shortly thereafter, Zeda Barnes Davis negotiated the leasing of her mineral rights of her undivided one-fifth interest. The negotiations involved E.L. Dunn, an appellant herein, and Lee McCormick, Dunn's partner in land-buying activities. The lease was signed on January 17, 1972, and promptly filed in the official public records. Eventually, a suit to quiet title was filed by Dunn against the Barnes' heirs, Ates and other interested parties for the purpose of resolving the parties' interests in the lease.
Depositions were ultimately taken of Dunn and Mrs. Davis, and affidavits from Mrs. Davis were submitted. The depositions and the affidavits give some insight as to what occurred during the lease negotiations in January, 1972 between Dunn and Davis. Dunn claims that he had no knowledge of the probate proceedings or the Ates lease, although he admits knowledge of the collateral quiet title problems. Davis, on the other hand, signed an affidavit claiming that she had fully advised Dunn of the Ates lease, which was consummated as a part of the probate administration proceedings. A second affidavit executed by Davis states that she had no recollection as to any discussion with Dunn about any pending lawsuit, and that she was "strongly persuaded" into executing the first affidavit.
Her deposition adds further confusion. She testified that she was under the impression the probate judge had given Matthew Barnes three months to consummate a lease on the fourteen-acre parcel, but that she didn't think it had gone through.[2] Mrs. Davis indicated that she had discussions with Dunn in January, 1972, pertaining to problems affecting the leasing arrangement, "since a family was involved in the leasing and that there was a lawsuit going on."[3] She also stated that Dunn was aware that the property sought to be leased was implicated in the probate administration proceedings. While we could add more to this discussion of Mrs. Davis' testimony, it is sufficient to say that it was confusing and appears to provide factual conflicts.
The record moreover reveals that the lease between Dunn and Mrs. Davis recited a consideration of $10 and "other considerations." *348 In reality Dunn presented Mrs. Davis with two drafts signed by his business associate Lee McCormick. The drafts were for $1750 and $3000. When Mrs. Davis attempted to cash them, they were dishonored by the bank. Davis demanded her lease back but was apparently refused. On May 11, 1972, the lease between Ates and Matthew Barnes was finally recorded in the public records of Santa Rosa County.
The case below terminated by the trial court's entry of summary judgment in favor of appellees holding: (1) that, as a matter of law, the appellants were not bona fide purchasers for value at the time that they consummated the January, 1972 leasing arrangements with Mrs. Davis, and (2) that the Barnes' estate lease to Ates was prior in time and prior in right.
The appellants argue that the Davis/Dunn lease is superior to the Barnes/Ates lease, because Dunn was a bona fide purchaser for value. Although the two drafts for $1750 and $3000 presented to Mrs. Davis in January, 1972 may have been dishonored, appellants contend that the lease clearly recites that $10 "and other consideration" was given to Mrs. Davis. Therefore, value was given. Implicit in appellants' position is that the Davis/Dunn lease was the first lease to be filed in the official records, thereby making it prior in right to the probate lease. Appellants, without citing any authority for this view, have suggested that the filing of the probate lease in the probate records is insufficient notice to accord one the status of a bona fide purchaser.
The appellees counter that absent actual payment of the consideration to Mrs. Davis, the appellants cannot be bona fide purchasers for value. Myers v. Van Buskirk, 96 Fla. 704, 119 So. 123 (1928). Since the $1750 and $3000 drafts were dishonored, actual payment was never made to Mrs. Davis until after the probate lease had been filed in the official records. Thus, they contend the appellants have failed to carry their required burden of proof of the recited consideration, because one can not rely on the mere recital of consideration in a deed or lease. See Lake v. Hancock, 38 Fla. 53, 20 So. 811 (1896).
The posture of the case now before us is an appeal from the granting of the appellees' motion for summary judgment. "A summary judgment is rendered [only] upon a showing that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Whitten v. Progressive Casualty Insurance Co., 410 So.2d 501, 506 (Fla. 1982); Correia v. Seaboard Coast Line Railroad Co., 393 So.2d 1161, 1163 (Fla. 1st DCA 1981).
The burden is upon the movant for summary judgment to negate conclusively every reasonable inference of material fact that could support the nonmoving party. Wills v. Sears, Roebuck & Co., 351 So.2d 29, 30 (Fla. 1977); see also Burkett v. Parker, 410 So.2d 947, 948 (Fla. 1st DCA 1982). In ascertaining whether there is any reasonable inference of material fact that would support the nonmoving party, thereby barring summary judgment, the trial court must consider the pleadings, depositions, affidavits, answers to interrogatories and admissions on file. Fla.R.Civ.P. 1.510(c); see also 30 Fla.Jur. Summary Judgment § 25 (Rev. 1974). Because there remain unresolved factual determinations within Dunn's deposition and the affidavits and deposition of Mrs. Davis, we reverse for further proceedings. Harvey Building, Inc. v. Haley, 175 So.2d 780, 783 (Fla. 1965).
The first factual conflict stems from the question concerning how much Dunn knew about the probate lease either at the time he negotiated his lease with Mrs. Davis or prior to that time. To be accorded the status of a bona fide purchaser for value, one must be without notice as to a transaction which is prior in time. § 695.01, Fla. Stat. (1941). Notice, of course, can be actual or constructive. Sapp v. Warner, 105 Fla. 245, 141 So. 124, reaffm'd. on reh., 105 Fla. 245, 143 So. 648 (1932); Hagan v. Sabal Palms, Inc., 186 So.2d 302, 313 (Fla. 2d DCA 1966), cert. denied, 192 So.2d 489 (Fla. 1966). We find that there are, at a minimum, reasonable inferences of fact from the record *349 that Dunn had actual notice of the probate lease at the time the Davis/Dunn lease was executed.
Constructive notice is a legal inference, and it is imputed to creditors and subsequent purchasers by virtue of any document filed in the grantor/grantee index  the official records. Sapp, supra, at 141 So. 127; Leffler v. Smith, 388 So.2d 261, 263 (Fla. 5th DCA 1980), rev. denied, 397 So.2d 778 (Fla. 1981). In this case it appears there was no constructive notice of the probate lease to anyone until May 11, 1972  the date the probate lease was filed in the official records. While it is true that the probate lease was filed in the probate records prior to the time that the Davis/Dunn lease was consummated, "[s]uch proceedings in the probate court do not constitute constructive notice to subsequent purchasers for value." Pierson v. Bill, 138 Fla. 104, 189 So. 679, 684 (1939); see also 66 Am.Jur.2d Records & Recording Laws § 136 (1973).[4]
Actual notice, on the other hand, is of two different types. It may be: "(1) Express, which includes what might be called direct information, or (2) implied, which is said to include notice inferred from the fact that the person had [the] means of knowledge, which it was his duty to use and which he did not use... ." Sapp, supra, at 141 So. 127; Hagan, supra, at 313. In the case at bar it is clear that Mrs. Davis' first affidavit indicated that she had fully apprised Dunn of the existence of the probate lease at the time of the consummation of the Davis/Dunn lease. While it is true that her second affidavit appears to recant the first affidavit, at least in part, her deposition gives a confused picture as to what she may have actually communicated to Dunn or as to what he may have acknowledged that he knew about the scope of the probate proceedings and any lease arrangement pursuant to those proceedings. Surely, the deposition of Mrs. Davis suggests reasonable inferences of the fact that Dunn may have been aware of the probate lease, and without question, Mrs. Davis' first affidavit, if accepted by the trier of fact, states clearly that Dunn knew of the probate lease.
Assuming that the lower court finds as a matter of fact that Dunn was aware of the probate lease at the time that he and Mrs. Davis entered into their lease, Dunn's effort to be accorded the status of a bona fide purchaser for value would fail in its entirety. If, however, the court finds that Dunn was unaware of the prior probate lease, the issue of the dishonored drafts then becomes a relevant concern.
The general rule is that to be accorded the status of a bona fide purchaser for value, one must have purchased for a valuable consideration. See, e.g., Berge v. Fredericks, 95 Nev. 183, 591 P.2d 246 (1979); see also § 695.01, Fla. Stat. The Davis/Dunn lease recites that Dunn paid $10 and "other consideration." While the recitation of a consideration does raise a presumption of the payment of a valuable consideration, it is open to parol proof whether or not and to what extent there has been actual receipt of the purported consideration. J.C. Vereen & Sons, Inc. v. City of Miami, 397 So.2d 979, 982-983 (Fla. 3d DCA 1981). However, when the question of consideration becomes material, as in the case at bar, the mere recital of consideration in a deed or lease is insufficient to show that the subject property was purchased for value. J.C. Vereen & Sons, supra, at 982-983; Lake, supra, 20 So., at 813.[5]
The basis for this rule apparently rests on the view that some forms of consideration are legally insufficient to be a purchase for value. For example, mere love and affection is insufficient to constitute value in the sense of according one the status of a bona fide purchaser for value. Florida National *350 Bank & Trust Co. v. Havris, 366 So.2d 491, 497 (Fla. 3d DCA 1979); Berge, supra, at 248; Alexander v. O'Neil, 77 Ariz. 91, 267 P.2d 730 (1954); 92 C.J.S. Vendor & Purchaser § 323 b.(2) n. 71 (1955). Consequently, when dealing with real property interests, consideration must constitute "value" in a technical sense to a greater degree than what is expected in contract law. O'Neil, supra, at 735.
The record suggests that the "other consideration" paid to Mrs. Davis, prior to the recording of the probate lease in the official records, consisted of two drafts for $3000 and $1750. It is of course undisputed that the actual payment of the consideration is required prior to the time that the purported bona fide purchaser for value learns of or receives constructive notice of the fact that his interest may be subordinate to another real property interest. Myers v. Van Buskirk, supra. Herein, it is contended that the consideration was worthless, because both drafts were dishonored and not made good prior to the recording of the probate lease in the official records.
This contention was addressed by this court in Wise v. Quina, 174 So.2d 590 (Fla. 1st DCA 1965), which we consider to be dispositive. The court in Wise carefully examined the Florida Supreme Court's pronouncement in Van Buskirk. It was determined that while actual payment of valuable consideration prior to notice of a superior real property interest was required, if the grantee became irrevocably bound to make payment, this would suffice as a substitute for actual payment. Wise, supra, at 593. In Wise, a promissory note was found sufficient to make a grantee irrevocably bound, because a suit could be maintained upon the note.
In the case at bar, the question is whether two dishonored drafts are sufficient to make Dunn irrevocably bound to Mrs. Davis. Appellees submit that the answer to the foregoing must be in the negative, because a draft does not act as an assignment of the funds it represents until the drawee accepts the draft. § 673.409(1), Fla. Stat. (1965).[6] Reading this section by itself totally ignores Section 673.413(2) and 673.802(1)(b), Florida Statutes.[7] These sections must be harmonized and read in pari materia with Section 673.409(1) and with each other, because they were all enacted as a part of the same act  Chapter 65-254, Laws of Florida, which is Florida's codification of the Uniform Commercial Code. Ivester v. State, 398 So.2d 926, 930 (Fla. 1st DCA 1981), rev. denied, 412 So.2d 470 (Fla. 1982).
Because a draft is a negotiable instrument,[8] it is clear that Sections 673.413(2) and 673.802(1)(b) permitted Mrs. Davis to maintain a suit on the drafts at the time that they were dishonored. B.C. Baum v. Cotton States Mutual Insurance Co., 141 Ga. App. 636, 234 S.E.2d 178 at 178 (1977); J.E.B. Stewart v. Citizens & Southern National Bank, 138 Ga. App. 209, 225 S.E.2d *351 761 (1976).[9] Thus, based on our previous opinion in Wise v. Quina, supra, Dunn was irrevocably bound, and because he was so bound, a valuable consideration had been extended to Mrs. Davis.[10]
However, one factual question exists in regard to the consideration extended. This relates to the second unresolved factual determination to which we alluded above. This question stems from the rule that one is a bona fide purchaser for value only to the extent of the valuable consideration extended.[11] The total consideration to be paid Mrs. Davis for the lease of the mineral rights to her interest in the fourteen-acre tract is a fact that the lower court will have to address  assuming that it does not first determine that Dunn was placed on notice of the collateral probate proceedings, and therefore for that reason alone Dunn could not be considered a bona fide purchaser for value. If the appellants have not fully paid the total consideration by way of the drafts that have been given to Mrs. Davis, then the appellants' interest in the mineral rights represented by Mrs. Davis' holdings is subject to
[t]he general rule ... that a subsequent purchaser without notice who is protected by the recording laws as against a prior unrecorded deed or mortgage is not entitled to protection to the extent of the part of the consideration that he has not paid when he receives notice of the prior conveyance.
Annot., 109 A.L.R. 163, 166 (1937).
We acknowledge that the depositions would appear to suggest that the drafts were in full payment by Dunn of the lease of Mrs. Davis' interest, but the depositions and record in this case present a fact pattern that is complex, confused, and readily subject to contradictory inferences. Thus, we deem it the wiser course to remand to the lower court for a factual determination on the question of whether or not Dunn was placed on notice of the probate lease, and if it is determined that he was not, how much "other consideration" was to have been paid to Mrs. Davis for the lease of her mineral rights.
REVERSED and REMANDED.
SHAW, J., concurs.
McCORD, J., dissents with opinion.
McCORD, Judge, dissenting.
I respectfully dissent from the majority opinion and would affirm the trial court. It is undisputed that as consideration for his lease, appellant Dunn gave Zeda Barnes two drafts drawn on the Bank of Jay to be charged to the account of appellant's business associate, Lee McCormick. One directed the payment to Barnes of $3,000 payable ten days after sight and the other directed payment of $1,750 thirty days from approval of title to the property. Upon presentation, both were dishonored. Attached to each draft upon dishonor was a notation of the reason for dishonor stating "title irregular." Section 673.104, Florida Statutes, provides in pertinent part as follows:
(1) Any writing to be a negotiable instrument within this chapter must:
(a) ...
(b) contain an unconditional promise or order to pay a sum certain in money... .
*352 It is clear that the $1,750 draft was conditioned upon title approval and thus was not a negotiable instrument under the terms of the above statute.
Appellants are in the untenable position of contending that their dishonored drafts were valuable consideration for their purchase. Unlike the situations in Wise v. Quina, 174 So.2d 590 (Fla. 1st DCA 1975), or Myers v. Van Buskirk, 96 Fla. 704, 119 So. 123 (1928), relied upon by the majority opinion, the drafts here were dishonored. The $1,750 draft was conditioned upon approval of title, and both drafts were dishonored because of alleged title deficiencies. Under these circumstances, it cannot be validly said that after the dishonor, appellant Dunn or his business associate, McCormick, was irrevocably bound to make payment to Davis. The only consideration she had was a lawsuit in which she might or might not recover. That, in my view, does not make Dunn a good faith purchaser for value.
NOTES
[1] Dunn v. Stack, 394 So.2d 1076 (Fla. 1st DCA 1981).
[2] Precisely when this three-month period commenced isn't altogether clear, assuming that Mrs. Davis was correct about the existence of the three-month period. Matthew Barnes received initial approval to attempt to lease the mineral rights on October 28, 1971. If this was the commencement of the three-month period, the January 17, 1972 lease between Dunn and Davis would have fallen within this period. Thus, it would not have been logical on Mrs. Davis' part to conclude that a lease had not been consummated by the estate during this period, since the full period hadn't passed.
[3] Tr. of November 7, 1975 Deposition of Zeda Barnes Davis, at 12; Record on Appeal at 282.
[4] The problem of documents filed in only the probate file not according constructive notice has since been corrected. Probate documents affecting or describing real property must now be filed in the Official Records. § 28.223, Fla. Stat. (1977).
[5] See also Osten-Sacken v. Steiner, 356 Mich. 468, 97 N.W.2d 37, 41 (1959); Davis v. Kleindienst, 64 Ariz. 251, 169 P.2d 78, 82 (1946); 92 C.J.S. Vendor & Purchaser, § 373 n. 16 (1955).
[6] Section 673.409(1), Florida Statutes, states: "A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it.
[7] Section 673.802(1)(b), Florida Statutes, states:

(1) Unless otherwise agreed where an instrument is taken for an underlying obligation:
* * * * * *
(b) In any other case the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. If the instrument is dishonored action may be maintained on either the instrument or the obligation; discharge of the underlying obligor on the instrument also discharges him on the obligation. (e.s.)
Section 673.413(2), Florida Statutes, states that "The drawer engages that upon dishonor of the draft and any necessary notice of dishonor or protest he will pay the amount of the draft to the holder or to any endorser who takes it up... ." We note that the suit would have been directed primarily at Lee McCormick, the drawer of the drafts and Dunn's business partner. Nonetheless, a suit could have been successfully initiated.
[8] § 673.104, Florida Statutes (1965).
[9] In construing sections of the Uniform Commercial Code, "it is pertinent to review holdings in other jurisdictions where the particular act is in force, in the interest of attempting to achieve a uniform interpretation." Mason v. Avdoyan, 299 So.2d 603, 605-606 (Fla. 4th DCA 1974). By doing so, we are merely carrying out the legislature's mandate "to make uniform the [commercial] law among the various jurisdictions." § 671.102(2)(c), Fla. Stat. (1965).
[10] Wise v. Quina involved a promissory note. This case involves a draft. We find this distinction to be without significance. Both are negotiable instruments. § 673.104(1), Florida Statutes (1965). Further, it has been determined that a draft drawn upon one's self is effectively no different from a promissory note. See Canal Insurance Co. v. First Nat'l Bank of Fort Smith, 266 Ark. 1044, 596 S.W.2d 710 (Ct.App. 1979), affm'd., 268 Ark. 356, 596 S.W.2d 709 (Ark. 1980).
[11] See, e.g., Fisher v. Shropshire, 147 U.S. 133, 144-145, 13 S.Ct. 201, 37 L.Ed. 109 (1892); 77 Am.Jur.2d Vendor & Purchaser § 709 (1975); and Annot., 124 A.L.R. 1259, 1261 (1940).