444 So.2d 935 (1984)
J.E. STACK and Whitney National Bank, Petitioners,
v.
E.L. DUNN and John C. Nix, Respondents.
No. 62722.
Supreme Court of Florida.
January 12, 1984.
Rehearing Denied February 27, 1984.
*936 Donald H. Partington of Clark, Partington, Hart, Hart & Johnson, Pensacola, for petitioners.
Ronald W. Ritchie of Reeves, King & Ritchie, Pensacola, for respondents.
EHRLICH, Justice.
This cause is before the Court on grounds of express and direct conflict between the decision of the district court below, Dunn v. Stack, 418 So.2d 345 (Fla. 1st DCA 1982), and a decision of this Court, Myers v. Van Buskirk, 96 Fla. 704, 119 So. 123 (1928). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
On October 8, 1971, Matthew Barnes, as administrator of his parents' estate, petitioned the probate court for permission to lease the mineral rights for a one-half undivided interest in a fourteen acre tract of land which was part of the estate. The tract was the subject of an ongoing suit to quiet title. On October 28, 1971, Barnes, pursuant to authority granted him as administrator of the estate by the probate court, negotiated a lease to Thomas Ates [the Ates lease]; the lease was approved by the probate court and placed in the probate file on November 16, 1971, but the lease was not recorded until May 11, 1972.
On July 21, 1972, the heirs of J.E. and Mary Barnes executed and duly recorded a power of attorney in favor of Matthew Barnes giving him specific authority to lease "mineral interests in real property owned by the estate of J.E. Barnes and Mary Barnes." The instrument specified the mineral rights to be leased by setting forth the legal description of the parcels, including that portion subject to the Ates lease. That portion was subsequently declared to be homestead on August 2, 1974.
In the meantime, Zeda Barnes Davis, Matthew Barnes's sister and the recipient of an undivided one-fifth share of her parents' interest in the land, negotiated a lease of the mineral rights to her share of the property with E.L. Dunn. This lease [the Dunn lease] was signed January 17, 1972, and recorded two days later. The Dunn lease recited a consideration of $10 and "other consideration," but no cash changed hands at that time. Dunn's business associate, Lee McCormick, drew two drafts totalling $4750 on his own account for Mrs. Davis, and Dunn delivered them to her as consideration for the lease. When Mrs. Davis tried to negotiate the drafts, the bank informed her that McCormick had refused to honor them because of the title irregularities still unsettled in the collateral suit. Mrs. Davis demanded the return of her lease, but Dunn refused. Instead, he filed a quiet title action against the Barnes heirs, Ates and other interested parties.
Respondent sought to assert the priority of the Dunn lease over the Ates lease, claiming to be a good faith purchaser for value without notice of the Ates lease. Additionally, respondent contended that the Ates lease was wholly invalid as it covered homestead property which had vested in the heirs upon the death of their parents. Because the power of attorney authorized Matthew to lease only mineral rights to real estate owned by the estate of the parents, and because homestead property by its very nature could never be owned by the estate, respondent contended that the power of attorney did not authorize the execution of the Ates lease.
Depositions and affidavits filed in connection with Dunn's suit are contradictory. Dunn claimed to have had knowledge of the collateral quiet-title suit but to have been ignorant of the probate proceedings or of the Ates lease. Mrs. Davis's testimony characterized by the DCA as "confusing and appear[ing] to provide factual conflicts," *937 was that Dunn had actual knowledge of the Ates lease, the probate proceedings and the collateral quiet title matter.
The trial court entered summary judgment, holding that as a matter of law Dunn was not a bona fide purchaser for value and that the Ates lease was prior in time and prior in right to the Dunn lease. The district court reversed the entry of summary judgment because of the existence of disputed issues of material fact concerning Dunn's actual notice of the preexisting lease. The district court went on to reverse the trial court's holding that Dunn was not a bona fide purchaser for value, in that Florida's enactment of the Uniform Commercial Code grants Davis the right to sue on the dishonored drafts. Dunn and McCormick, according to the district court, were thus "irrevocably bound," which was, in itself, valuable consideration sufficient to make Dunn a bona fide purchaser for value.
We quash the decision of the district court but we remand to the trial court for further proceedings on the issue of the validity of the Ates lease.
In holding that respondents were, as a matter of law, bona fide purchasers for value, the district court recognized that the mere recital of consideration in an instrument was insufficient consideration and examined the dishonored drafts in light of Myers v. Van Buskirk and the First District's later application of it in Wise v. Quina, 174 So.2d 590 (Fla. 1st DCA 1965). Myers involved competing contracts to convey the same property. The later of the two contracts was purchased by Belk and Cunningham, without knowledge of the first, and they subsequently executed a quitclaim deed on the property to third parties, Cobb and Cambron, for valuable consideration. At that same time, Myers, the owner of the land, delivered a warranty deed to Cobb and Cambron for the property. Cobb and Cambron executed a check for $3000, payable to Myers's bank and delivered it to the bank with instructions that it be paid over to Myers upon delivery of quiet title. The check was paid out after Cobb and Cambron had received both constructive and actual notice of the prior contract to convey. In weighing the opposing equities, the Supreme Court reiterated the classic formulation of priority: "One who has purchased and received a conveyance of legal title in good faith, for value, and without notice, actual or constructive, of an agreement to convey previously entered into by the grantor with a third person, will be protected against such prior agreement." 96 Fla. at 710, 119 So. at 125. The Court went on to note that notice of a prior claim was ineffective against a second claim if it was received after the parties to that second claim had paid the purchase price or "become irrevocably bound for its payment." Id. It is on the latter phrase that the First District built its decision below.
On the facts before it in Myers, however, the Court found that Cobb and Cambron were not entitled to the protection accorded to bona fide purchasers for value precisely because they had neither paid nor irrevocably bound themselves to pay valuable consideration before they received notice of the preexisting claim. Even though they had delivered the check to the grantor's bank and had made it payable to the bank itself, the Court refused to find that a valuable consideration sufficient to protect the interest in the legal title against the prior claim had existed before Cobb and Cambron received notice. This holding cannot be used to define Dunn and McCormick as "irrevocably bound" to pay valuable consideration especially in light of the affirmative refusal to honor the drafts given to Mrs. Davis.
The First District construed the "irrevocably bound" language of Myers in Wise v. Quina. The issue there was whether one who had yet to pay full purchase price could be a bona fide purchaser for value. There the purchaser had agreed to pay $34,000 for the property and had received title in exchange for an $8,000 down payment and a $26,000 mortgage payable to the grantor in monthly installments. *938 The district court held that payment of the full purchase price was not required for grantees to enjoy bona fide purchaser for value status because the grantees
were "irrevocably bound" to pay the said balance, within what we conceive to be the meaning of these quoted words as used by the Supreme Court in the . .. Myers case. We consider that the [grantees] were so bound even though they could, of course, elect to default on the note and mortgage, in which event the holder of these instruments would have the right to file against them a law action on the note or an equity suit to foreclose the mortgage. Nevertheless, they had no legal right to revoke their promise to pay and they were contractually bound by legally-enforceable instruments to make the payments (or suffer the legal consequences of default).

174 So.2d at 593-94. (Emphasis supplied.) We need not address the merits of the Wise decision, because it is factually distinguishable from the case before us. Unlike the grantees in Wise, respondents here asserted a legal right to revoke their promise to pay  Mrs. Davis's failure to deliver clear title. In the event Mrs. Davis had sought to bring suit on the dishonored drafts, as the First District noted she was entitled to do, the respondents could have asserted as a valid legal defense failure of consideration for the dishonored drafts. § 673.408, Fla. Stat. (1971). One who has a legal right to revoke a promise to pay cannot be irrevocably bound to pay. Thus, we cannot approve the First District's decision that the right to bring an action on a dishonored draft is valuable consideration sufficient to support the lease.
The determination that valid consideration had not supported the lease does not, unfortunately, unravel the tangled issues material to this quiet title action. After the Ates lease was recorded, but prior to the execution of the power of attorney by the Barnes heirs, Dunn paid Mrs. Davis a ten dollar deposit on the lease he had earlier recorded. Section 695.01(1), Florida Statutes (1971), provides that a lease executed by virtue of a power of attorney is not effective against a subsequent purchaser for valuable consideration without notice unless the power of attorney is recorded before the subsequent purchaser acquires an interest. Thus, Dunn's payment of consideration prior to the recordation of Barnes's power of attorney makes the attempt to ratify the Ates lease ineffectual as against the Dunn lease.
The issue which must be resolved, then, is the legal validity of the Ates lease as recorded on May 11, 1972, without reference to the subsequent attempts to ratify it. The property in question was not finally declared to be homestead until two years after the events which are the focus of this litigation. Matthew Barnes's authority to lease the property as administrator of the estate was granted by the probate court which later divested itself of any jurisdiction over the property by declaring it to be homestead. This authority to lease was not questioned by Dunn until four years after the Ates lease was recorded. We do not have before us the record of the proceedings in probate court and are unable to make valid legal judgments on the sketchy allusions to those proceedings contained in the record properly before us. Suffice it to say that apparently there was a question as to which of the parcels owned by J.E. Barnes was in fact homestead and that Zelda Barnes Davis may have believed the parcel covered by the Ates lease to have been an asset of the estate at the time she agreed in the probate court to allow her brother to lease it on behalf of the estate. Issues of law and of equity are of necessity determined by the facts giving rise to the dispute. We can find no indication of any full and fair litigation of this point at the trial court level at which the necessary findings of fact must be made and, thus, we must remand this case for further proceedings.
Accordingly, the decision of the district court is quashed and the case is remanded for further proceedings.
It is so ordered.
*939 ALDERMAN, C.J., and ADKINS, BOYD, OVERTON and McDONALD, JJ., concur.