958 So.2d 1035 (2007)
CONTRACTPOINT FLORIDA PARKS, LLC, Appellant,
v.
STATE of Florida, and State of Florida, Department of Environmental Protection, Appellee.
No. 1D06-4746.
District Court of Appeal of Florida, First District.
June 5, 2007.
Mike Piscitelli of Vezina, Lawrence & Piscitelli, P.A., Ft. Lauderdale, and Bradley S. Copenhaver of Vezina, Lawrence & Piscitelli, P.A., Tallahassee, for Appellant.
Bill McCollum, Attorney General, Louis F. Hubener, Acting Solicitor General, and Lynn C. Hearn, Deputy Solicitor General, Office of the Attorney General, Tallahassee, for Appellees.
WOLF, J.
This case originated in a breach of contract action filed by appellant against appellee, State of Florida, Department of Environmental Protection (DEP). In April 2001, DEP entered into a contract with appellant in which appellant was to construct and operate 143 vacation cabins, *1036 along with associated concessions, in eight state parks. Under the contract, appellant was scheduled to pay 15% of its gross sales to DEP. The contract was to last for 30 years, with two 10-year renewal options based on satisfactory service. In August 2005, appellant brought suit against DEP for wrongful termination of the contract.
Following a jury trial, judgment was entered against DEP for $628,543. However, DEP refused to pay the judgment asserting section 11.066(3), Florida Statutes (2001), barred payment. The relevant portion of section 11.066, Florida Statutes (2001), provides:
(1) As used in this section, the term "appropriation made by law" has the same meaning as in s. 1(c), Art. VII of the State Constitution and means money allocated for a specific purpose by the Legislature by law in a general appropriations act or a special appropriations act.
(2) The state and each state agency, when exercising its inherent police power to protect the public health, safety, or welfare, is presumed to be acting to prevent a public harm. A person may rebut this presumption in a suit seeking monetary damages from the state or a state agency only by clear and convincing evidence to the contrary.
(3) Neither the state nor any of its agencies shall pay or be required to pay monetary damages under the judgment of any court except pursuant to an appropriation made by law. To enforce a judgment for monetary damages against the state or a state agency, the sole remedy of the judgment creditor, if there has not otherwise been an appropriation made by law to pay the judgment, is to petition the Legislature in accordance with its rules to seek an appropriation to pay the judgment.
(4) . . . Moreover, it is a defense to an alternative writ of mandamus issued to enforce a judgment for monetary damages against the state or a state agency that there is no appropriation made by law to pay the judgment.

(Emphasis added).
In December 2005, appellant filed a Petition for Writ of Mandamus seeking to compel Florida's Chief Financial Officer (CFO) to pay the damage award. The trial court entered a final order denying the Petition for Writ of Mandamus, stating that in the face of the clear language of section 11.066, appellees did not have a clear legal duty to pay the judgment to appellants without a specific appropriation for that purpose. This timely appeal followed.
Whether appellant had a clear legal right to enforce the monetary judgment and, thus, was entitled to mandamus relief rests on this court's interpretation of whether section 11.066, Florida Statutes (2001), is applicable to an action based on a breach of contract. The issue of the application of sovereign immunity in contract actions involving the State was specifically dealt with in Pan-Am Tobacco Corp. v. Department of Corrections, 471 So.2d 4 (Fla.1984). The court determined that the application of the doctrine in that situation would result in the State's inability to enter into binding contracts.
It is basic hornbook law that a contract which is not mutually enforceable is an illusory contract. Howard Cole & Co. v. Williams, 157 Fla. 851, 27 So.2d 352 (1946). Where one party retains to itself the option of fulfilling or declining to fulfill its obligations under the contract, there is no valid contract and neither side may be bound. Miami Coca-Cola Bottling Co. v. Orange-Crush Co., 291 F. 102 (D.Fla.1923), affirmed, 296 F. 693 (5th Cir.1924).

*1037 Respondent contends that the requirement of mutuality of remedy is satisfied by petitioner's opportunity to bring a claims bill before the legislature. This Court has recently held that subjecting oneself to the possibility of suit in a court of law is not sufficient obligation to support a contract. Stack v. Dunn, 444 So.2d 935 (Fla.1984). We cannot now, in good conscience, hold that the chance to seek an act of grace from the legislature is sufficient remedy to create mutuality.
Where the legislature has, by general law, authorized entities of the state to enter into contract or to undertake those activities which, as a matter of practicality, require entering into contract, the legislature has clearly intended that such contracts be valid and binding on both parties. As a matter of law, the state must be obligated to the private citizen or the legislative authorization for such action is void and meaningless. We therefore hold that where the state has entered into a contract fairly authorized by the powers granted by general law, the defense of sovereign immunity will not protect the state from action arising from the state's breach of that contract.
Id. at 5.
The trial court determined that section 11.066, Florida Statutes (1991), superseded the decision in Pan-Am Tobacco.
Contrary to the trial court's reasoning, section 11.066 does not express any legislative intent to overturn 22 years of case law subjecting the state to breach of contract actions. That case law is founded on the Florida Supreme Court's determination that the specific statutes authorizing government agencies to enter into contracts constitute a waiver of sovereign immunity for actions arising under those contracts. The Legislature is presumed to know the judicial construction of existing law when it enacts a new law, and the Legislature is presumed to have adopted prior judicial constructions of a law unless a contrary intention is expressed in the statute. Jones v. ETS of New Orleans, Inc., 793 So.2d 912 (Fla. 2001); City of Ormond Beach v. City of Daytona Beach, 794 So.2d 660 (Fla. 5th DCA 2001). We will not infer that it was the legislative intent to render all state contracts void and meaningless for lack of mutuality of obligation. It is axiomatic that we will not interpret a statute in a manner which would lead to an absurd or unreasonable result. State v. Webb, 398 So.2d 820, 824 (Fla.1981). Likewise, the courts will not infer an intent by the Legislature to effect so important a measure as the repeal of existing law without an express intention to do so. Knowles v. Beverly Enters.-Fla., Inc., 898 So.2d 1, 9 (Fla.2004).
While it has not passed any legislation expressing an intent contrary to Pan-Am Tobacco that would render state contracts illusory, the Legislature has passed laws intended to enhance and expand the State's contracting authority. With respect to the specific contract underlying this case,[1] the 1996 Legislature expressed the importance of viable public/private contracting projects:
The Legislature recognizes that many of the parks in the state park system need a variety of facilities to enhance their use and potential. Such facilities include, but are not limited to, improved access, camping areas, picnicking shelters, park management offices and facilities, and environmental education facilities. *1038 The need for such facilities has exceeded the ability of the state to provide such facilities in a timely manner with moneys available. The Legislature finds it to be in the public interest to provide incentives for partnerships with private organizations with the intent of producing additional revenue to help enhance the use and potential of the state park system.

§ 258.015(3)(a), Fla. Stat. (emphasis added).
The Legislature could not, on the one hand, intend to make all public/private contracts illusory as the trial court effectively found it did in section 11.066, and, at the same time, direct DEP to provide incentives for partnerships with private organizations that necessarily entail entering into public/private contracts.
We, therefore, reverse the decision of the trial court and remand for further proceedings consistent with this opinion. We are not unmindful, however, that the wording of the statute in question does not exclude contract actions. Nor is it clear how DEP will comply if, in fact, there is not a legislative appropriation to cover the judgment (a determination which appears to have been made by the trial court in applying the statutory provisions).
Accordingly, we certify the following question to be one of great public importance:
DOES SECTION 11.066, FLORIDA STATUTES, APPLY WHERE JUDGMENTS HAVE BEEN ENTERED AGAINST THE STATE OR ONE OF ITS AGENCIES IN A CONTRACT ACTION?
BARFIELD and VAN NORTWICK, JJ., concur.
NOTES
[1] Section 258.015(3)(a) was expressly incorporated into the contract between Contract-Point and DEP.